**MAMMOTH CAVE PRODUCTION CREDIT ASSOCIATION, Appellant,**

**v.**

**T. S. YORK and Commercial Credit Equipment Corporation, Appellee.**

Court of Appeals of Kentucky.

March 8, 1968.

As Modified on Denial of Rehearing June 28, 1968.

Walter A. Baker, Wilson, Baker, Herbert & Garmon, Glasgow, for appellant.

E. R. Gregory, John David Cole, Francis, Potter & English, Bowling Green, for appellee.

OSBORNE, Judge.

The controversy on this appeal is between Mammoth Cave Production Credit Association, appellant, and Commercial Credit Equipment Corporation, appellee. T. S. York, appellee, is a nominal party, and has taken no part in this appeal.

. The parties have filed an "Agreed Statement of Case on Appeal" from which we quote the pertinent facts:

"This appeal involves a determination of priority of liens under the Uniform Commercial Code.

"Mammoth Cave Production Credit Association (hereinafter referred to as PCA) has a judgment against the Appellee York for $3,460.05 with interest thereon at six

percent from June 13, 1962. The judgment is subject to a credit of $1,252.25 for the proceeds from the sale of some cattle. Commercial Credit Equipment Corporation (hereinafter referred to as Commerical Credit) has a judgment against the Appellee York in the sum of $1,481.00. The proceeds from the sale of a tractor, $1,810.00, are claimed by both PCA and Commerical Credit.

"On June 13, 1962, the debtor, York, executed and delivered to PCA a financing statement and security agreement on his farm equipment. This agreement contained the following clauses:

"2.  EQUIPMENT on the hereinafter described land:

All farm equipment.

*     *     *     *     *     *

"4.  All property similar to that listed above, which at any time may hereafter be acquired by the Debtor including, but not limited to, all offspring of livestock, additions and replacements of livestock and poultry, and replacements of and additions to equipment and other personal property above described; * * *

"PCA did not file the security agreement at that time.

"On September 29, 1962, the Debtor York purchased a tractor from Commercial Credit's assignor under a conditional sales contract. The total sales price was $2,770.70 and there was a cash down payment of $975.20. No trade-in allowance was given York for existing machinery or equipment. The Debtor took immediate possession of the tractor. The conditional sales contract was not filed.

"On April 4, 1963, PCA filed its security agreement and financing statement with the Franklin (sic) County Court Clerk. On September 10, 1964, Commercial Credit filed its conditional sales contract with the Franklin (sic) County Court Clerk.

Neither PCA nor Commerical Credit had actual notice or knowledge of the existence of the security interest of the other at the time each filed with the clerk.

"The Simpson Circuit Court held the security interest of Commerical Credit to be first and superior to that of PCA in the proceeds from the sale of the tractor."

There are several questions raised on this appeal. Basically, it involves a very common situation. One party, PCA, enters into a loan transaction with the debtor. As part of this agreement it attempts to obtain a security interest not only in what the debtor presently owns, but upon all property the debtor shall subsequently acquire of the same type. This practice is sanctioned and made valid by the code, KRS 355.9–108, KRS 355.9–204(3). The debtor later buys new equipment in which the vendor, Commerical Credit's assignor, retains a security interest for the payment of the price on the unpaid portion thereof. It would seem unjust for the first creditor to have a superior lien with regard to this property over the vendor who has not received the entire purchase price for the new item. However, the code makes special provisions to protect the seller in such situations, KRS 355.9–312 (4), "A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives the collateral or within ten days thereafter." However, here the vendor and his assignee failed to take advantage of these provisions. In such a situation the code provides that the purchase money security interest is to be treated as any other security interest in determining priority and if both are to be perfected by filing, the one filed first has priority. KRS 355.9–312(5). It is undisputed that PCA filed first and would prevail in the absence of other circumstances.

Commercial Credit makes three arguments: First, that the description in PCA's

security agreement was not sufficiently clear to include the tractor; secondly, that the purchase money security interest in the tractor did not have to be filed to be perfected under KRS 355.9–302(1) (c); and thirdly, that the statutory scheme leads to an unjust result and should not be followed.

■ These issues will be discussed in reverse order. The first argument is based on the fact that at the time Commercial Credit's assignor sold the tractor to the debtor, PCA had nothing at all filed to show their security agreement. They, therefore, argue that principles of estoppel should be indulged in to prevent the unjust result of having a subsequently filed security agreement take priority over their reserved security interest. The code is very explicit on this point KRS 355.9–312(5), "In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interest in the same collateral shall be determined as follows: (a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under KRS 355.9–204(1) and whether it attached before or after filing; * * *." This rule explicitly applies to the situation in question, a purchase money security interest not filed within the ten-day grace period given. It must be remembered that the purpose of the code is to set the rules of the road by which business decisions and practices are to be regulated. To go outside the overall scheme of the code in a situation where the code is unambiguous would lead to much confusion in the business world. Therefore, we must reject this plea. Once a vendor fails to take advantage of the special provisions set out in the code for his protection, he is placed on the same footing as any other secured party.

■ The second argument is that this instrument did not have to be filed to be perfected under KRS 355.9–302(1) (c) which exempts from filing requirements, "a purchase money security interest in farm equipment having a purchase price not in excess of $2500 * * *." They argue that since the buyer made a down payment of $975.20 on the equipment which had a total sales price of $2,770.70, the price should be considered as the difference— $1,795.50. If this section spoke of a purchase money security interest of less than $2,500, they would undoubtedly be right, because KRS 355.9–107 provides: "A security interest is a 'purchase money security interest' to the extent that it is: (a) taken or retained by the seller of the collateral to secure all or part of its price; * * *." However, the section speaks clearly and unambiguously in terms of "farm equipment having a *purchase price* not in excess of $2500 * * *." Byrd v. Babin, 196 La. 902, 200 So. 294, says that, "In short, the purchase price is the price agreed upon by the parties as a consideration for which the property is sold and purchased." In such a situation as this, we believe that this would mean the cash amount paid or agreed to be paid, plus the agreed value of any merchandise traded, but not including interest or finance charges.[1] Here the amount was $2,770.90, which is clearly above $2,500. Therefore, the security agreement was not excluded from the filing requirement.

The third argument is that the security agreement did not attach to the tractor in question, or at least was not perfected as to the tractor in question by the filing of the security agreement and financing statement. This argument is based on the idea that the description in the security agree-

1. This would put such a concept in line with cash sales price as defined in the Kentucky law on retail installment sales contracts, KRS 371.210(10). This seems to be the only situation where exactly what the purchase price was would be in serious question.

ment was not specific enough to include the tractor under KRS 355.9–110 which requires: "For the purpose of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." The description in the security agreement, "All farm equipment" and "All property similar to that listed above" seems so vague and indefinite that it is doubtful that "it reasonably identifies what it described." It could include anything from a screw driver or garden hoe to the largest machinery. In light of this vague provision it seems doubtful that it was really agreed that tractors and other large farm equipment were to be security for the loan. This seems more like a provision inserted by an over-anxious lending officer to encompass as much security as possible, rather than an actual agreement that a security interest was to attach on all the farm equipment. See Spivak, Secured Transaction, pp. 26–29.

█ It has been pointed out by many writers upon the subject that while the code rules relating to description have been liberalized to allow flexibility, nevertheless, the description must still identify the collateral so that it can be distinguished and separated from property not covered. The very purpose of a description is to separate this particular property from all others of like kind. Hart County Deposit Bank v. Hatfield, 236 Ky. 725, 33 S.W.2d 660. In the financing statement filed by PCA listed in the first paragraph "all farm equipment" and in the second covering after-acquired property "all property similar to that listed above" it did nothing more than compound confusion. The phrase "all farm equipment" is about as general and vague as you can get. Then, when you add "all property similar to that listed above" when there is none so listed, a bad matter is made even worse.

Inadequate and incomplete descriptions of property whether they be in an execution attachment, chattel mortgage or financing statement have caused courts great consternation and difficulty. See In the Matter of Drane, D.C., 202 F.Supp. 221. We can envision no logical excuse for any financing organization to incorporate a description as vague as the one presented to the court in this case. The description is studiously designed to cover everything and describe nothing.

Judgment affirmed.

All concur.