471 F.2d 1124
 11 UCC Rep.Serv. 911
 In the Matter of LAMINATED VENEERS CO., INC., Bankrupt.
COMMERCIAL TRADING COMPANY, INC., Petitioner-Appellant,
v.
I. Robert BASSIN, as Trustee in Bankruptcy of Laminated
Veneers Co., Inc., Respondent-Appellee.
 No. 114, Docket 72-1473.
 United States Court of Appeals,
Second Circuit.
 Submitted Nov. 2, 1972.
Decided Jan. 15, 1973.
 
 Samuel Gutterman, New York City (Alexander H. Rockmore, New York City, of counsel), for appellant.
 Arutt, Nachamie, Benjamin & Ruben, New York City (William S. Kaye, New York City, of counsel), for appellee.
 Before LUMBARD, FEINBERG and OAKES, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Appellant made a secured loan to the bankrupt, Laminated Veneers Co., Inc., which was validly executed on December 20, 1968. The covering security agreement specifically pledged items (including a truck) described in its Schedule A and generally pledged other items through an "omnibus clause" set out in the margin below.[1] The omnibus clause gave the appellant a valid secured interest in accounts receivable, inventory, fixtures, machinery, equipment, and tools of the bankrupt. The question here is whether Commercial's secured interest in "equipment" gave it a lien on two Oldsmobile automobiles owned by the bankrupt. We hold that it did not.
 
 
 2
 The appellant relies upon the broad language of New York Uniform Commercial Code Sec. 9-109(2) (McKinney 1964) (hereinafter cited as "U.C.C.") to show that the "equipment" term of the omnibus clause included the two automobiles. Section 9-109(2) defines "equipment" for present purposes as a residual category which includes all goods not included in the definitions of inventory, farm products or consumer goods. Thus automobiles would fall within this broad category if the definition of Section 9-109 governed for purposes of the security agreement. The classifications of Section 9-109, however, are intended primarily for the purposes of determining which set of filing requirements is proper.
 
 
 3
 We look rather to U.C.C. Sec. 9-110 which requires that the description of personal property "reasonably identif[y]" what is described. The conclusion that greater specificity is required finds additional support in U.C.C. Sec. 9-203(1)(b), which provides that the security agreement must contain a "description" of the collateral. Certainly the word "equipment" does not constitute a "description" of the Oldsmobiles. Unlike a financing statement (U.C.C. Sec. 9-402) which is designed merely to put creditors on notice that further inquiry is prudent, see In re Leichter, 471 F.2d 785 (2d Cir. 1972), the security agreement embodies the intentions of the parties. It is the primary source to which a creditor's or potential creditor's inquiry is directed and must be reasonably specific. See U.C.C. Sec. 9-203, Practice Commentary 1 at 394; P. Coogan, W. Hogan & D. Vagts, Secured Transactions Under the Uniform Commercial Code Sec. 4.06, at 289-90 (Bender's Uniform Commercial Code Service Vol. 1, 1968). Cf. In re Weiner's Men's Apparel, 2 Bankr.L.Rep. (4th ed.) p63,727 (S.D.N.Y.1970); Mammoth Cave Production Credit Association v. York, 429 S.W.2d 26, 28-29 (Ky.1968).
 
 
 4
 What would a potential creditor find upon examination of the security agreement in this case? The only mention of vehicles of any kind in the agreement is the listing of an International truck in Schedule A. Beyond that there is only the "omnibus clause" and the generic "equipment" therein. Any examining creditor would conclude that the truck as the only vehicle mentioned was the only one intended to be covered. We thus need not reach the contention that a prior invalid lien on one of the automobiles inured to the benefit of the trustee for benefit of the estate and as such is superior to the lien of Commercial.
 
 
 5
 For the reasons stated above we affirm the decision of the court below.
 
 LUMBARD, Circuit Judge (dissenting):
 
 6
 The majority correctly states the question here as "whether Commercial's secured interest in 'equipment' gave it a lien on two Oldsmobile automobiles owned by the bankrupt." Essentially, this question resolves itself into two very distinct issues: 1) was it the intent of the parties, as expressed in the security agreement, that Commercial could look to these Oldsmobiles as collateral for its loan to the bankrupt; 2) if such was the expressed intent, is the term, "equipment," a sufficient description of the collateral under Secs. 9-110 and 9-203 of the New York Uniform Commercial Code to create a valid security interest in this collateral? The majority appears to answer both of these questions in the negative, as did the referee and the district judge. From this holding, I must dissent.
 
 
 7
 Initially, I would hold the referee's and the district judge's finding that the parties did not intend the security interest to extend to the two automobiles in issue to be clearly erroneous. It seems to me that the very breadth of the omnibus clause of the security agreement is indicative of an intent to cover all personal property owned by the bankrupt, with the exception of stock in trade. The trustee presented no evidence to indicate that this omnibus clause was not intended to mean exactly what it says. Therefore, I feel that the question of intent should have been resolved in appellant's favor.
 
 
 8
 There is no argument that the Oldsmobiles would not be included under the Uniform Commercial Code's definition of "equipment" in Sec. 9-109(2).[1] The question is whether the use of such a generic term is a sufficient "description of the collateral" for purposes of Sec. 9-203(1)(b).[2] The cross reference for this description requirement is to Sec. 9-110, which provides that
 
 
 9
 For purposes of this Article any description of personal property . . . is sufficient whether or not it is specific if it reasonably identifies what is described.
 
 
 10
 The official comments to Sec. 9-110 elaborate on the nature of the description requirement:
 
 
 11
 The requirement of description of collateral (see Section 9-203 and Comment thereto) is evidentiary. The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it -that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are the most exact and detailed nature, the so-called "serial number" test.
 
 
 12
 The precise issue here seems to have been considered only once before. In Goodall Rubber Co. v. News Ready Mix Corp., 7 U.C.C. 1358 (Wisc.Circ.Ct., 1970), the court held that this generic term was sufficient to satisfy Secs. 9-110 and 9-203. In addition, there have been a number of cases that have considered, in the context of both security agreements and financing statements, the sufficiency of descriptions phrased in other generic terms. The decisions have not been uniform. Compare In Re Trumble, 5 U.C.C. 543 (U.S.D.C., W.D., Mich., 1968) ("consumer goods" held to be sufficient), Thomson v. O. M. Scott Credit Corp., 1 U.C.C. 555 (Pa.Ct. of Common Pleas, 1962) ("inventory" sufficient), In Re Goodfriend, 2 U.C.C. 160 (U.S.D.C., E.D., Pa., 1964) ("inventory" sufficient), and Security Tire and Rubber Co., Inc. v. Hlass, 441 S.W.2d 91 (Ark. S.Ct., 1969) ("inventory" sufficient) with In Re Bell, 6 U.C.C. 740 (U.S.D.C., Colo., 1969) ("consumer goods" insufficient), Household Finance Corp. v. Kopel, 303 F.Supp. 317 (U.S.D.C., Colo., 1969) ("consumer goods" insufficient), and Mammoth Cave Production Credit Association v. York, 429 S.W.2d 26 (Ky.Ct. of App., 1968) ("farm equipment" insufficient). The two Colorado cases holding "consumer goods" to be insufficient were decided under the Colorado version of Sec. 9-110, which in terms requires much more specificity in a description of consumer goods than does the New York version.[3] It appears that the majority of courts that have considered the sufficiency of descriptions stated in terms of Sec. 9-109 definitions, when Sec. 9-110 was phrased as it is in New York, have held such descriptions to have been sufficient. In this regard, it should be noted that borrowing by businesses in return for security interests in their "inventory," another generic term defined in Sec. 9-109, has become a common financing device under Article 9 of the Uniform Commercial Code.
 
 
 13
 I do not mean to suggest that the court should hold that all descriptions in terms of "equipment" will necessarily satisfy Secs. 9-110 and 9-203. Arguably, any such per se rule would be inconsistent with the mandate of Sec. 9-110 that the description "reasonably identif[y] what is described." This language, as well as the official comments, would seem to indicate a more ad hoc, factual analysis. In this case, we have two Oldsmobile automobiles that were owned by a corporation in the retail lumber business. The most logical conclusion for any reasonable subsequent lender was that these automobiles were being used by the corporation in its business and were thus equipment, with respect to which he was charged with notice of a prior security interest. At the very least, a subsequent lender should be put on inquiry by these circumstances and should seek to learn from the borrower and the prior lender the nature of the use of this property. Therefore, I would reverse the district court's holding that the description was insufficient under the Uniform Commercial Code, and I would hold that the description in terms of "equipment" was, on the facts of this case, sufficient to "reasonably identify" the automobiles and to bring them under the security agreement.
 
 
 14
 The trustee's alternative argument, which was rejected by the referee and the district court, is based on the existence of an earlier security interest in one of the two automobiles. Because this interest was not perfected, it was avoided by the trustee under Sec. 70(c) of the Bankruptcy Act and Sec. 9-312(5)(b) of the Uniform Commercial Code. Accordingly, the trustee now argues that this security interest should be preserved for the benefit of the estate and asserted to defeat Commercial's interest. Without reaching the propriety of subrogation in this case, it seems clear that the trustee's argument is frivolous. Since the earlier interest was unperfected, Commercial is just as able to avoid it under Sec. 9-312(5)(b) as was the trustee. Therefore, subrogation to the earlier interest does not increase the trustee's rights against Commercial.
 
 
 15
 I would reverse.
 
 
 
 [1]
 In addition to all the above enumerated items, it is the intention that this mortgage shall cover all chattels, machinery, equipment, tables, chairs, work benches, factory chairs, stools, shelving, cabinets, power lines, switch boxes, control panels, machine parts, motors, pumps, electrical equipment, measuring and calibrating instruments, office supplies, sundries, office furniture, fixtures, and all other items of equipment and fixtures belonging to the mortgagor, whether herein enumerated or not, now at the plant of Laminated Veneers Co., Inc. located at 115-02 15th Ave. College Point, New York, and all chattels, machinery, fixtures, or equipment that may hereafter be brought in or installed in said premises or any new premises of the mortgagor, to replace, substitute for, or in addition to the above mentioned chattels and equipment with the exception of stock in trade
 
 
 [1]
 Goods are . . . (2) "equipment" if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods
 From this quotation, it is apparent that the majority is not entirely correct when it states that "[s]ection 9-109(2) defines 'equipment' for present purposes as a residual category which includes all goods not included in the definitions of inventory, farm products or consumer goods." Such a statement ignores the standards enunciated in the first half of the definition for determining when goods are "equipment." Similarly incorrect is the majority's unsupported statement that "[t]he classifications of Section 9-109 . . . are intended primarily for the purposes of determining which set of filing requirements is proper." The official comments to Sec. 9-109 state:
 The classification is important in many situations: it is relevant, for example, in determining the rights of persons who buy from a debtor goods subject to a security interest (Section 9-307), in certain questions of priority (Section 9-312), in determining the place of filing (Section 9-401) and in working out rights after default (Part 5). Comment 5 to Section 9-102 contains an index of the special rules applicable to different classes of collateral.
 
 
 [2]
 [A] security interest is not enforceable against the debtor or third parties unless . . . (b) the debtor has signed a security agreement which contains a description of the collateral
 
 
 [3]
 CRS 1963, Sec. 155-9-110 provides:
 For purposes of this article, any description of personal property is sufficient if it specifically identifies and itemizes in the security agreement what is described as to consumer goods, and whether or not it is specific if it reasonably identifies what is described as to all other personal property.