In re SAREX CORPORATION, Bankrupt.

Selena GOUDEAU, Plaintiff-Appellee,

v.

Irving ARZT, Trustee of Sarex Corporation, Bankrupt, Defendant-Appellant.

No. 317, Docket 74–1913.

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1974.

Decided Jan. 15, 1975.

Martin F. Brecker, Henry & Brecker, New York City, for defendant-appellant.

Michael Miller, Landay, Rosen & Miller, New York City, for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

As long as the language of law is ambiguous as it so often is, and so long as lawyers (or laymen) fail to take the time or omit to exercise the acuity necessary to eliminate or reduce that ambiguity, there will be law suits like this one that could have been avoided. The question on this appeal relates to the meaning of a security agreement and the sufficiency of its description of the property secured. Like the bankruptcy judge, Roy Babitt, and the district court judge, Lawrence W. Pierce, of

690

the United States District Court for the Southern District of New York, we hold for the secured party (Selena Goudeau) and accordingly affirm the order directing the trustee of the bankrupt Sarex Corporation (Sarex) to turn over to her the proceeds received from a sale of the property secured necessary to pay the secured balance due.

Sarex, a New Jersey corporation, sold plastic cassette covers and bases and proposed to manufacture them from molds. In early 1970 it agreed to buy some 5 million covers and bases, and for manufacturing purposes two molds, a "1 x 1 cavity mold" and a "2 x 2 cavity mold," from E.G.L. Enterprises Ltd. (EGL) in Montreal. It was stipulated that, until paid for, the molds were not to be removed from EGL's premises. EGL proceeded to obtain a $7,500 Canadian default judgment against Sarex for failure to take delivery of and pay for the covers and bases. EGL seized and sold the molds to satisfy the judgment and subsequently bought them back. To have EGL resume production of the covers and bases, transfer title to the "2 x 2" mold and agree to transfer title to the "1 x 1" mold on payment for the final shipment of cassette covers and bases, Sarex needed $10,000.

Sarex's president, O. Louis Seda, borrowed on its behalf the necessary $10,000 from his wife, the appellee here. Evidencing the security for the promissory note was a printed form of U.C.C. security agreement (chattel mortgage) duly executed July 15, 1970, which contained the following schedule:

SCHEDULE

Describe items of collateral, the address where each item will be located and describe any prior liens, etc., and the amounts due thereon. If items are crops or goods affixed or to be affixed to real estate describe the real estate and state the name and address of the owner of record thereof.

| *Items* | *Location, etc.* |
|---|---|
| Machinery, equipment and fixtures; Molds, tools, dies, component parts including specifically the: | To be located either at the Debtor's plant in North Bergen, New Jersey; and in the case of the molds also at the plants of contractors who may be using said molds in the manufacture of products for the Debtor |
| 1 x 1 two cavity cassette cover and base mold | |
| 2 x 2 *four cavity cassette cover* and base mold | |
| One twenty-four cavity roller mold | |
| One sixteen cavity hub mold | |

The appropriate financing statement was duly filed on July 23, 1970. Subsequently, the "1 x 1" mold was released from the lien and a termination statement filed as to it. Sarex filed a Chapter XI petition in August, 1970, under § 322 of the Bankruptcy Act, 11 U.S.C. § 722. Sarex was adjudicated a bankrupt on April 13, 1972. A lien sale of machinery, equipment, tools and molds was held on May 1, 1972, and of the $40,000 proceeds that were realized apparently only $40 was attributable to the molds itemized in the schedule.

The appellant trustee argues that only the scheduled molds were covered, relying principally upon our In re Laminated Veneers Co., 471 F.2d 1124 (2d Cir. 1973). That case held security agreements to be governed by New York Uniform Commercial Code § 9–110 (McKinney's Consol.Laws, c. 38, 1964) (the Code is hereinafter cited as U.C.C.), which states that a description of personal property is

sufficient "whether or not it is specific if it reasonably identifies what is described."[1] There, because a truck (but not the two automobiles in question) was included in a schedule of specifically pledged items, the generic word "equipment" in an omnibus clause was held not to include the two automobiles, the court saying that "Any examining creditor would conclude that the truck as the only vehicle mentioned was the only one intended to be covered." 471 F.2d at 1125.

Appellant argues that not to limit the security agreement coverage to molds (and presumably "tools, dies, component parts" which we take it refer to the molds) is to rewrite the schedule so as to make it read "*All* machinery, equipment and fixtures, including, *but not limited to* molds, tools, etc." In a sense this is how we interpret the agreement, particularly as the word "including" is often used (and construed) as a term of enlargement, not of limitation. *E.g.,* American Surety Co. v. Marotta, 287 U.S. 513, 517, 53 S.Ct. 260, 77 L.Ed. 466 (1933). Appellant's own construction, however, would have us give no effect whatsoever to the words "Machinery, equipment and fixtures." It would have us treat the semicolon that follows the phrase in the schedule as if it were a colon, and the molds as simply designations of the kind of machinery, equipment and fixtures.

We recognize, however, that the first phrase in the "location" section of the security agreement is ambiguous in at least one respect: the use of the words "To be located" rather than "now or hereafter located" implies that the machinery, equipment and fixtures covered were not at the date of execution of the agreement at Sarex's New Jersey plant. But the second portion of the location clause indicates that the molds might also be located at the plant of contractors (such as EGL) who might be using the molds in manufacture. If only molds were to be covered by the security agreement, as appellant would have it, this part of the "location" clause would not have included the phrase "and in the case of the molds." At least this is so in the absence of an indication that molds were to be differentiated from "tools, dies, component parts," an indication that we do not have.

*Laminated Veneers* does not stand for the proposition that the use of generic terms in a security agreement description will be given no effect. It does stand for the proposition that the generic term "equipment" used in reference to a lumber business does not include within it two automobiles, at least where a truck is specifically itemized in the schedule. Our case would be closer to *Laminated Veneers* if in question was coverage of some other mold than those specifically listed; even then, however, a "mold" is a more specific designation, more readily alerting a creditor than the broader term "equipment."

Here a reasonable draftsman could have considered, at least out of an abundance of caution, that molds (and their components) were not part of "machinery," "equipment" or "fixtures." By referring to the molds specifically we hold that he did not render meaningless the previous reference to "machinery, equipment and fixtures; . . .." The ultimate question is whether the description "reasonably identifies" what is described. U.C.C. § 9–110. The drafters of the Code told us that this requirement is "evidentiary," *i. e.,* it depends on the proof in each case; but caution us not to require "exact and detailed" descriptions and thereby to use the so-called "serial number" test. U.C.C. § 9–110 Official Comments. *See* P. Coogan, W. Hogan &

---

1. The New Jersey Code section, N.J.S.A. 12A:9–110, governing here reads as does New York's but without the italicized section, inapplicable here:

For the purpose of this Article any description of personal property or, *except as oth-* *erwise required by subsection (1) of Section 9–402 relating to the contents of a financing statement,* real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

D. Vagts, Secured Transactions Under the Uniform Commercial Code § 4.06, at 289–90 (Bender's Uniform Commercial Code Service Vol. 1, 1968). *Laminated Veneers* tells us that reliance purely on generic terminology may, however, be insufficient. This case lies in between and, for reasons stated, we hold the language in question to have reasonably specified and therefore identified the collateral in question.

Judgment affirmed.