408 So.2d 1190 (1982)
PEOPLES BANK & TRUST COMPANY
v.
COMFORT ENGINEERING COMPANY, INC.
No. 53,164.
Supreme Court of Mississippi.
January 20, 1982.
Smith, Downs, Ross, Trapp & Coleman, Wendell H. Trapp, Jr., Corinth, for appellant.
Sparks & Colburn, David R. Sparks, Tupelo, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
ROY NOBLE LEE, Justice, for the court:
Comfort Engineering Company, Inc. filed suit against Peoples Bank & Trust Company in the Circuit Court of Lee County, Honorable Neal Biggers, presiding, seeking possession of four air conditioning units valued *1191 at approximately $86,000. The circuit judge, sitting without a jury, entered judgment in favor of Comfort Engineering Company, Inc., and Peoples Bank & Trust Company has appealed to this Court.
The sole assignment of error presents the question of whether or not the lower court erred in failing to recognize that Peoples Bank & Trust Company held a valid perfected security interest superior to the interest of Comfort Engineering Company, Inc., and erred in declining to award possession of the air conditioning equipment to Peoples Bank & Trust Company.
On June 27, 1975, Fashions by Wisz, Inc. (Fashions), acquired certain property in the city of Tupelo, Mississippi, for the purpose of operating a sewing plant. On December 19, 1975, appellant extended credit to Fashions in the sum of $150,000 evidenced by a promissory note in such amount. The promissory note was secured by a security interest in certain personal property generally described as sewing equipment, electric wiring, carpet, light fixtures, air conditioning units and duct work. The standard security agreement was executed by Fashions in favor of appellant and a 12-page Uniform Commercial Code Financing Statement (UCC-1) was executed in duplicate by Fashions in favor of appellant. The Uniform Commercial Code Financing Statement was filed forthwith in the Chancery Clerk's Office of Lee County, Mississippi, on December 28, 1975, and in the Office of the Secretary of State of the State of Mississippi on December 31, 1975.
On January 28, 1976, Fashions contacted appellant for further credit and appellant extended Fashions an additional $150,000. Fashions executed a second promissory note payable to appellant in said amount with an indication upon the said note that it constituted an additional advance and was secured by the same collateral that secured the first promissory note. On August 9, 1976, the two $150,000 promissory notes from Fashions to appellant, aggregating $300,000, were consolidated and the indebtednesses were renewed.
On May 3, 1976, appellee sold two air conditioning units to Fashions for the sum of $45,544.85 and on July 1, 1976, appellee sold two additional air conditioning units to Fashions for the sum of $40,666. Two conditional sales contracts were executed by Fashions in favor of appellee covering the respective transactions. The contracts were subsequently filed with the Lee County Chancery Clerk on August 19, 1977.
Fashions became involved in deep financial trouble, defaulted upon its debts and filed a petition in bankruptcy. There were then in existence (1) a security agreement and Uniform Commercial Code Financing Statement (UCC-1) from Fashions to the appellant, dated December 19, 1975, and recorded in the Office of the Chancery Clerk of Lee County, Mississippi, and in the Office of the Secretary of State of the State of Mississippi, which contained the following statement of collateral: "air conditioning units and duct work," (2) conditional sales contract signed by Fashions dated May 3, 1976, which was filed in the Office of the Lee County Chancery Clerk on August 19, 1977, pertaining to two air conditioning units and conditional sales contract executed by Fashions in favor of appellee dated July 1, 1976, filed for record in the Lee County Chancery Clerk's Office on August 19, 1977, pertaining to the additional two air conditioning units. On October 2, 1979, appellee filed an action in replevin, claiming a security interest in the four air conditioning units mentioned above and the Lee County Circuit Court awarded possession of the four units to appellee.
(a) Security agreement. The security agreement, upon which appellant relies, contained an after-acquired property clause. Language in the instrument reads as follows:
It being intended to convey whether correctly described or not, all miscellaneous sewing equipment, etc. as listed on supplemental sheets attached, as of this date and to be hereafter acquired and located in our place of business at 120 Franklin Street, Tupelo, Mississippi, together with all equipment, parts, accessories, *1192 attachments and replacements thereof, and additions thereto, and all other goods of the same class, whether now owned or hereafter acquired by debtor and the proceeds thereof (hereinafter collectively called `collateral') to secure (1) payment of a note dated various dates executed and delivered by debtor to bank in the sum of $300,000.00 payable as to principal and interest as therein provided; ... (emphasis added.)
The attachments incorporated into the security agreement and the dual Uniform Commercial Code Financing Statement (UCC-1), executed by Fashions, contained the following reference and statement of collateral:
"Air conditioning units and duct work."
The Uniform Commercial Code Financing Statement also contained the following provision:

Miscellaneous equipment used in our business known as Fashions by Wisz, Inc. located at 120 Franklin, Tupelo, Ms. and more particularly described as follows: As of this date and to be hereafter acquired.

Mississippi Code Annotated section 75-9-312(5)(a) (1972) governs the priority between conflicting security interests in the same collateral as follows:
(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interest which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:
(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.
The parties agree that the facts of this case are largely uncontradicted and that the decision here is one upon the law as applied to those facts. It is undisputed that appellant perfected its security interest in the air conditioning units, according to law. Likewise, it is undisputed that appellee wholly failed to perfect its security interest in said property.
(b) After-acquired property clause. Mississippi Code Annotated section 75-9-204 (1972) provides the following with reference to after acquired property.
(1) Except as provided in subsection (2), a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral.
(2) No security interest attaches under an after-acquired property clause to consumer goods other than accessions (section 75-9-314) when given as additional security unless the debtor acquires rights in them within ten (10) days after the secured party gives value.
(3) Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment (section 75-9-105(1)).
Thus, after-acquired property clauses are valid under Mississippi law. The financing statements should reasonably describe the collateral to be secured, although further inquiry beyond the financing statement may be necessary to examine the after-acquired property to disclose the complete status of the transaction. National Cash Register Co. v. Firestone & Co., 346 Mass. 255, 191 N.E.2d 471 (1963).
Official comments to the Uniform Commercial Code insofar as they relate to after-acquired property, follows:
2. Subsections (1) and (3) read together make clear that a security interest arising by virtue of an after-acquired property clause has equal status with a security interest in collateral in which the debtor has rights at the time value is given under the security agreement.
69 Am.Jur.2d, Secured Transactions, section 298 (1973), states the general law on *1193 after-acquired property in a security agreement as follows.[1]
Many secured transactions contemplate that the collateral will include both the debtor's existing assets and also assets thereafter acquired by him in the operation of his business, such as inventory, accounts, equipment and other collateral. Article 9 of the Uniform Commercial Code generally validates any provision in a security agreement covering after-acquired property even though the inclusion of such property results in what is sometimes termed a "floating lien."
Accordingly, where it is desired to cover after-acquired property in a security agreement, such property should be included as part of the collateral. However, a mere reference to the after-acquired property in general terms is sufficient, such as a statement including within the security interest all collateral of the kind covered that may be acquired by the debtor at any time.
(c) Purchase money secured party. Appellee contends that it is entitled to priority and equitable consideration by the Court for the reason that appellee attained the status of a purchase money secured party. Admittedly, appellee sold the air conditioning units directly to Fashions, installed them at Fashions, and was not paid for the sales. However, in order for appellee, or any other party in its position, to receive such consideration, it must act and comply with the statute. Mississippi Code Annotated section 75-9-312(4) (1972) provides the action to be taken by a party to obtain the benefit of a purchase money security interest:
(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten (10) days thereafter.
Since appellee wholly failed to comply with the above provision, it failed to protect itself and cannot now claim the benefit of the section.
In Mammoth Cave Production Credit Association v. York, 429 S.W.2d 26 (Ky. 1968), the Court said:
They therefore argue that principles of estoppel should be indulged in to prevent the unjust result of having a subsequently filed security agreement take priority over their reserved security interests.
* * * * * *
Therefore, we must reject this plea. Once a vendor fails to take advantage of the special provisions set out in the code for his protection, he is placed on the same footing as any other secured party. (429 S.W.2d at 28)
(d) Conditional sales contract. Appellee suggests that, since it never surrendered title to the air conditioning units, it should be entitled to some consideration therefor. Mississippi Code Annotated section 75-9-202 (1972) states the following:
Each provision of this chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.
In O'Dell v. Kunkel's, Inc., 581 P.2d 878 (Okl. 1978), the Oklahoma Court stated:
Devices whereby title is reserved in the seller-creditor for a period of time following possession by the debtor are treated under Article 9 of the UCC as though title had been transferred to the debtor and the seller-creditor had retained only a security interest in the goods.
(581 P.2d at 881)
See also James Talcott, Inc. v. Franklin National Bank of Minneapolis, 292 Minn. 277, 194 N.W.2d 775 (1972).
(e) New value. Appellee argues that for an interest in after-acquired property to overcome the claim that security was taken for an antecedent debt, the secured *1194 party, at the inception of the new transactions, must have given new value in some form and the after-acquired property must have come in the ordinary course of business or as an acquisition that was made under a contract of purchase entered into, pursuant to the security agreement, within a reasonable time after the giving of new value, and cites Sears, Roebuck & Co. v. Detroit Federal Savings & Loan Ass'n., 79 Mich. App. 378, 262 N.W.2d 831 (1978). Appellee also contends that the collateral was insufficiently described in the executed security agreement, citing In Re Laminated Veneers Co., Inc., 471 F.2d 1124 (2d Cir.1973), and Mammoth Cave Production Credit Ass'n v. York, 429 S.W.2d 26 (Ky. 1968).
We are not persuaded by that argument and think the reasoning in Barth Brothers v. Billings, 68 Wis.2d 80, 227 N.W.2d 673 (1975), is sound, where the Court said:
The argument by Barth is that the security interest is invalid in after-acquired property because no new value was given. Sec. 409.204(1), Stats., provides that a security interest cannot attach until (1) there is an agreement; (2) value is given; and (3) the debtor has rights in the collateral. Sec. 401.201(44), Stats., provides in pertinent part:
"Except as otherwise provided . . a person gives `value' for rights if he acquires them:
"...
"(b) As security for or in total or partial satisfaction of a pre-existing claim ..."
Therefore, a security interest may be given for a pre-existing debt. In White and Summers, Handbook of the Law Under the Uniform Commercial Code (1972), p. 792, sec. 23-4, the authors discussed this issue:
"The initial harvest of Article Nine cases under this section includes few surprises. Despite the plain language of 1-201(44)(b), several parties have argued that a creditor does not give value if he takes his security interest to secure a pre-existing claim against the debtor. The courts have tossed these parties out on their ears, as well they ought."
This section does not invalidate security interests in after-acquired property where a pre-existing claim is the value given, however. Rather, this section ".. . is of importance principally in insolvency proceedings under the federal Bankruptcy Act or state statutes which make certain transfers for antecedent debt voidable preferences." Uniform Commercial Code, (UCC) sec. 9-108, Comment.
(227 N.W.2d at 676, 677)
Discussing the subject, in Sears, Roebuck & Co. v. Detroit Federal Savings & Loan Ass'n., 79 Mich. App. 378, 262 N.W.2d 831 (1978), the Court stated:
Sections 9108 and 9204 of the Uniform Commercial Code (citations omitted) give specific rights to a creditor to secure a debt with property not owned by the debtor at the time that the parties enter into a security agreement. Article 9 of the code generally validates such after-acquired property interests, although they may be subjected to subsequent purchase money security interests properly perfected under 9312(3) and 9312(4).
* * * * * *
The purchase of inventory such as refrigerators, stoves, vents, disposals and the like was contemplated by the defendant bank and provided for in its properly filed security agreement. The bank gave new value at the time of the original transaction and the after-acquired property came in the ordinary course of the debtor's business. Therefore, the after-acquired property clause gave the defendant bank a valid security interest in the personal property acquired by Hicks when Hicks received delivery of the property from Sears, Roebuck and Company. (emphasis added.)
* * * * * *
The plaintiff's claim must fail because it failed to protect its purchase money security interest, although it properly perfected its rights.
(262 N.W.2d at 834)
*1195 We are of the opinion that appellant had a valid perfected security interest in the after-acquired air conditioning units and that appellee failed to perfect its purchase money security interest in said property. The lower court, therefore, erred in entering judgment for appellee, and the same is reversed and judgment is rendered here for appellant.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and SUGG, P. JJ. and WALKER, BROOM, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.
NOTES
[1] In Re: Hammons, 438 F. Supp. 1143 (S.D. Miss. 1977). In Re: King-Porter Co., 446 F.2d 722 (5th Cir.1971).