### In re HOWARD'S APPLIANCE CORP.

### No. CV 87–0665.

United States District Court, E.D. New York.

Nov. 30, 1987.

Philip Irwin Aaron, P.C., Jericho, N.Y., for Howard's Appliance Corp.

Jules V. Speciner, Great Neck, N.Y., for Carrier Distribution Credit Corp.

Herzfeld & Rubin, New York City, for Committee of Unsecured Creditors.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an appeal from an order and decision of the United States Bankruptcy Court for the Eastern District of New York (J. Hall) dated February 3, 1987. On August 6, 1986, Appellee/Debtor Howard's Appliance Corp. (“Howard's”) filed a voluntary Chapter 11 Petition with the United States Bankruptcy Court for the Eastern District of New York. Shortly thereafter, Appellant/Creditor Carrier Distribution Credit Corp. (“CDCC”) moved in the Bankruptcy Court to vacate the automatic stay to enable it to foreclose on the security interest it alleged in the debtor's inventory. Judge Hall denied CDCC's motion.

The pertinent facts of the case are as follows. Howard's operated one appliance store in Nassau County and two appliance stores in Suffolk County. Debtor's Nassau County store closed in March, 1986, and thereafter debtor conducted business exclusively in Suffolk County. Howard's and CDCC entered into security agreements, dated March 19, 1981 and March 19, 1985, which provided that CDCC would finance

the purchase of air conditioners by Howard's, and Howard's in turn granted CDCC a security interest in the air conditioners. To perfect its security interest, CDCC filed financing statements with the New York Secretary of State on March 25, 1985, the Nassau County Clerk on March 21, 1985, and the Suffolk County Clerk on April 19, 1982. The Suffolk County financing statement had the notation "3/30/85" next to the pre-printed words "Maturity Date."

On the date on which Howard's filed for bankruptcy, some of the air conditioners were located in New York, and others were being stored in a public warehouse in New Jersey. After the goods arrived at the public warehouse, non negotiable warehouse receipts were issued to Howard's. Additionally, CDCC never filed a financing statement with the New Jersey Secretary of State.

### I.

With respect to the New York air conditioners, the Bankruptcy Court held that the maturity date on the Suffolk County financing statement had lapsed and therefore the financing statement was no longer valid. The Bankruptcy Court reasoned as follows: If a debtor has a place of business in only one county of the state, then to perfect a security interest, financing statements have to be filed with the New York Secretary of State and with the county clerk of that county. N.Y.U.C.C. § 9–401(1)(c) (McKinney 1964 and Supp. 1987). Since Howard's had business locations only in Suffolk County, CDCC was required to file financing statements with both New York State and Suffolk County. The Bankruptcy Court found that the Suffolk County financing statement lapsed on March 30, 1985, as that was the maturity date designated on the financing statement. Therefore, CDCC lost its protection as a perfected secured creditor.

■ However, the Bankruptcy Court erred in its finding that the financing statement had lapsed. The 1962 version of § 9–403(2) provided that, "[a] filed financing statement which states a maturity date ... is effective until such maturity date and thereafter for a period of 60 days." N.Y.U.C.C. § 9–403(2) (McKinney 1964) (amended 1977). However, § 9–403(2) was amended in 1977 to read: "A filed financing statement is effective for a period of five years from the date of filing." N.Y.U. C.C. § 9–403(2) (McKinney Supp.1987). The official comments to the Uniform Commercial Code, as well as commentators in the field, explain the amendment's effect. "The change in subsection (2) makes every financing statement ... effective for a full five years, thus changing the rule of the 1962 Code that a financing statement which showed a maturity less than 5 years was effective only for the period until maturity plus 60 days." Uniform Commercial Code (9th ed.) § 9–403(2) official comments. *See also;* 9 R. Anderson, *Anderson on The Uniform Commercial Code* § 9–403:9 (3rd ed. 1985); *Hawkland, Lord & Lewis, UCC Series,* § 9–403:02 at 445 (1986); T. Quinn, *Uniform Commercial Code Commentary And Law Digest,* ¶ 9–403[A][4][6] (1978).

This change does not prevent the parties from consenting in their financing agreement to shorten the period of a security interest to less than five years. Indeed, parties are free to enter into such an agreement as long as it is contained in a legally enforceable contract. A financing statement, however, is not a contract; its sole purpose is to alert prospective creditors that there may be a prior security interest in a debtor's property. "Unlike a financing statement ... which is designed merely to put creditors on notice that further inquiry is prudent, ... the security agreement embodies the intention of the parties. It is the primary source to which a creditor's or potential creditor's inquiry is directed...." *Commercial Trading Company, Inc. v. Bassien (In re Laminated Veneers Co., Inc.),* 471 F.2d 1124, 1125 (2d Cir.1973). Howard's and CDCC did not contract, either in the financing agreement or elsewhere, to shorten the period of CDCC's security interest to less than five years. Therefore, since the maturity date on the Suffolk County financing statement has no effect, the financing statement did not

lapse and CDCC has a perfected security interest in the New York air conditioners.

## II.

With respect to the New Jersey air conditioners, CDCC contends that the security interest in these air conditioners was perfected by way of the New York financing statement. Since the Bankruptcy Court ruled that the New York financing statement was invalid, it concluded that there was no financing statement upon which the security interest in the New Jersey air conditioners could be perfected. Therefore, it was not necessary for the Bankruptcy Court to reach the issue of whether a valid New York financing statement could perfect a security interest in the air conditioners located in New Jersey.

CDCC argues that at the time its security interest in the New Jersey air conditioners attached, CDCC and Howard's understood that the air conditioners would be kept in New York and therefore, under N.Y.U.C.C. § 9–103(1)(c), the financing statement filed in New York would be sufficient to perfect CDCC's security interest. Section 9–103(1)(c) provides:

> If the parties to a transaction creating a purchase money security interest in goods in one jurisdiction understand at the time that the security interest attaches that the goods will be kept in another jurisdiction, then the law of the other jurisdiction governs the perfection and the effect of perfection or non-perfection of the security interest from the time it attaches until thirty days after the debtor receives possession of the goods....

N.Y.U.C.C. § 9–103(1)(c) (McKinney's Supp. 1987). New York law governing perfection of a security interest requires the filing of a valid financing statement in New York State. N.Y.U.C.C. § 9–302(1) (McKinney 1964 and Supp.1987). CDCC argues that since CDCC and Howard's intended the goods to be kept in New York, New York's requirements for perfection are applicable. It further contends that because it properly filed a financing statement according to the laws of New York, its security interest in the New Jersey air conditioners is perfected.

■ However, this Court is unable to determine based on the record before it whether § 9–103(1)(c) applies or whether one of the other subsections of § 9–103(1) governs instead. The resolution of this inquiry is dependant upon a factual determination not made by the Bankruptcy Court because of its finding that the New York financing statement had lapsed. Section 9–103(1)(c) is applicable only "[i]f the parties ... understand at the time the security interest attaches that the goods will be kept in another jurisdiction." Thus, in order to determine if subsection (c) applies, this Court must first know what the understanding or intention of the parties was at the requisite time regarding where the goods would be kept. *See* J. White & R. Summers, *Uniform Commercial Code* § 23–18 at 969 ("[I]f the minds do not meet on where the debtor intends to keep the goods or if such a meeting occurs after the security interest attaches ..., 9–103(1)(c) will either not apply at all or will apply quite uncertainly.").

The controlling question of the parties' intentions and expectations was never probed by the Bankruptcy Court. The Bankruptcy Court is directed to make the necessary factual findings and to determine whether CDCC's security interest in the New Jersey air conditioners was perfected by the New York filing.

With respect to the New York air conditioners, the decision of the Bankruptcy Court that CDCC's security interest was unperfected is reversed. This case is hereby remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

SO ORDERED.