**CITIZENS BANK AND TRUST, Plaintiff,**

v.

**GIBSON LUMBER COMPANY, Defendant.**

**Civ. A. No. C–87–0091–BG(M).**

United States District Court, W.D. Kentucky.

March 1, 1989.

Walter Winn Davis, Glasgow, Ky., for Citizens Bank and Trust.

Ray B. White, Bowling Green, Ky., for Gibson Lumber.

752

Patricia Ann Thomas, Burkesville, Ky., for Randall Gibson.

Mark Flener, Bowling Green, Ky., trustee.

## MEMORANDUM OPINION

BOYCE F. MARTIN, Jr., Circuit Judge, Sitting by Designation.

This is a review of a decision of the bankruptcy court. The first issue is whether or not omnibus clauses are effective in Kentucky when used to describe general types of collateral in security agreements. The second issue is, given that an omnibus clause may be effective, whether it remains effective against certain specific collateral that is not listed on a schedule of specific items of collateral which is also part of the security agreement.

On December 31, 1982, Gibson Lumber Company granted a security interest in its property to Citizens Bank and Trust Company. A security agreement was signed by the parties and perfected by a proper filing on January 3, 1983. The agreement described the collateral in which Citizens took a security interest as "[a]ll inventory of lumber and logs, accounts receivable, all saw mill equipment and all rolling stock, including, but not limited to...." It then went on to list some twenty-one separate items in varying degrees of specificity. For example, item "1" is described as "Fulghum debarker, decks, conveyers, motors, controls," whereas item "20" is described as "Lumber grading shed, rips, gangs, saws, decks & misc. equipment."

What was not specifically listed in this schedule of collateral was Gibson Lumber's Corley gang saw, Delta feeder mechanism and a Detroit Allison diesel generator. This equipment constituted an integral part of the operation of the Gibson sawmill, and was substantial enough to be housed in its own building. These items were sold at auction by the trustee in bankruptcy on October 16, 1985. Citizens claims that, as the senior secured creditor, it is entitled to the proceeds from this sale.

■ The question before the bankruptcy court was the effective scope of the security agreement, specifically, whether either the phrase "all sawmill equipment" or "saws" was sufficient to create a security interest in the Corley gang saw, the Delta feeder mechanism and the Detroit Allison diesel generator. The bankruptcy court found that these words were not sufficient, first in an opinion dated December 23, 1986 and again on reconsideration in an opinion dated March 11, 1987.

In reaching its decision the bankruptcy court reviewed Kentucky law regarding the effect of ommnibus clauses. The portion of Kentucky's version of the Uniform Commercial Code governing the sufficiency of descriptions of collateral provides:

For purposes of this Article any description of personal property or real estate is sufficient if it reasonably identifies what is described. K.R.S. 355.9–110.

The bankruptcy court held that under *Mammoth Cave Production Credit Ass'n. v. York*, 429 S.W.2d 26 (Ky.1968) omnibus clauses are not effective in Kentucky because they fail to identify in a reasonable manner the collateral they are designed to encumber. The court also noted that in *Horse Cave State Bank v. Nolin Production Credit Ass'n.*, 672 S.W.2d 66 (Ky.App. 1984) Kentucky has substantially retreated from the holding in *Mammoth Cave Production Credit.*

In resolving the question of whether Citizens' description of collateral was sufficient to encumber the property in question, the bankruptcy court applied an "inquiry test." It found authority for this test in numerous cases decided by Kentucky courts. *See Nolin Production Credit Ass'n. v. Canmer Deposit Bank*, 726 S.W.2d 693, 697 ("the present test to be applied ... is, in effect, an 'inquiry test.'"); *In re Pendleton*, 40 B.R. 306, 309 (Bankr. W.D.Ky.1984); *In re Drane*, 202 F.Supp. 221, 224 (W.D.Ky.1962). Under this test "a description of collateral is sufficient for either a security agreement or a financing statement if it puts subsequent creditors on notice so that, aided by inquiry, they may reasonably identify the collateral involved." *Canmer*, 726 S.W.2d at 697.

In applying this test to the present case the bankruptcy court stated in its original opinion that "[a] fair reading of the enumerated items would lead a third party to the logical conclusion that Citizens did not intend to obtain, and that Gibson Lumber did not intend to grant, any security interest in any equipment not specifically listed in the security agreement." The court again reached the same conclusion following rehearing and reconsideration of the case. The court asserted that "[i]t would stretch credibility to hold that these large and expensive items of equipment were intended as collateral when other similar items were so specifically enumerated." In reiterating its position, the court was careful to note that it did not rely upon *Mammoth Cave Production Credit Ass'n. v. York*, 429 S.W.2d 26 (Ky.1968) as the basis of its decision.

The bankruptcy court was wise to shy away from *York* because that opinion has been the subject of criticism. More importantly, it now appears that *York* is no longer the law of Kentucky. In *Nolin Production Credit Ass'n. v. Canmer Deposit Bank*, 726 S.W.2d 693 (Ky.App.1986), the Kentucky Court of Appeals, effectively rendered *York* meaningless. Subsequent to this decision, the Kentucky Supreme Court declined to review the case.

In its opinion the court in *Nolin Production Credit* first surveyed and summarized the law in Kentucky regarding the sufficiency of description of items of collateral. *See In re Drane*, 202 F.Supp 221 (W.D.Ky. 1962); *In re Anselm*, 344 F.Supp 544 (W.D. Ky.1972); *American Plating & Manufacturing Co. v. Liberty National Bank and Trust Co.*, 468 F.Supp. 103 (W.D.Ky.1979); *In re Cooley*, 624 F.2d 55 (6th Cir.1980); *In re Pendleton*, 40 B.R. 306 (Bankr.W.D.Ky. 1984); *Horse Cave State Bank v. Nolin Production Credit Ass'n.*, 672 S.W.2d 66 (Ky.App.1984).

The court in *Nolin Production Credit* found the Sixth Circuit's decision in *Cooley* to be persuasive. In *Cooley* the Sixth Circuit had noted that "[i]t would be contrary to the purpose of the UCC" to hold that certain lawn tending equipment owned by a lawn care company was not sufficiently described by the omnibus clause "[a]ll machinery and equipment." 624 F.2d at 58. Following this reasoning the court in *Noline Production Credit* found that the court's characterization in *York* of the omnibus clause "all farm equipment" as an overly broad and vague description of collateral "appears to run contrary to the purpose of the UCC and its provisions enacted in our state." 726 S.W.2d at 700. The court concluded that "[t]he continued vitality of the [*York*] opinion would seem to exist only in those unique and limited circumstances wherein a debtor could prove that the creditor, in contravention of a parties' security agreement, sought to incorporate within its terms as collateral property not originally contemplated by the parties to be included." 726 S.W.2d at 700.

This constitutes a change in the law of Kentucky. Because the use of an omnibus clause in a security agreement is consistent with the purpose of the Uniform Commercial Code, we find that Citizens' omnibus clause "all equipment" is effective to cover the Corley gang saw, Delta feeder and the Allison diesel generator.

 Given that such a clause is effective the question then becomes does it provide a description of collateral sufficient to include specific collateral not listed on a schedule of specific collateral which is part of the same security agreement? This is precisely the same issue addressed by the Second Circuit in *In re Laminated Veneers Co. Inc.*, 471 F.2d 1124 (2nd Cir. 1973). That case involved a security agreement with a schedule of specific items of collateral, including among other things, a truck. The security agreement also contained an omnibus clause which ostensibly created a security interest in all equipment of the debtor. The question before the court was whether this omnibus clause was sufficient to grant a security interest in two automobiles not listed on the schedule of collateral. These automobiles did constitute "equipment" as defined by the Code with regard to the debtor. *See* U.C.C. § 9–109(2). The court in *Laminated Veneers* found that under U.C.C. § 9–110 a

description of personal property in a security agreement must "reasonably identify" what is described. It then asked a question similar to the "inquiry test" in *Nolin Production Credit:* "What would a potential creditor find upon examination of the security agreement in this case?" *Laminated Veneers*, 471 F.2d at 1125. The court concluded that "[a]ny examining creditor would conclude that the truck as the only vehicle mentioned was the only one intended to be covered." *Id.* This seems illogical. An examining creditor could just as easily conclude that "all equipment" included the cars not specifically listed on the schedule. A potential creditor could reasonably conclude that the parties intended "all equipment" to include equipment not listed on the schedule, and that this equipment was to be covered by the security agreement.

It appears the bankruptcy court in the present case committed the same error in reasoning as the Second Circuit did in *Laminated Veneers*. It found that "[a] fair reading of the enumerated items would lead a third party to the logical conclusion that Citizens did not intend to obtain, and that Gibson Lumber did not intend to grant, any security interest in any equipment not specifically listed in the security agreement." This, however, is only one fair reading of the security agreement. It does not constitute the only logical conclusion which can be drawn. An examining creditor could just as easily conclude that Gibson Lumber intended to grant and Citizens intended to obtain a security interest in all of Gibson's equipment. A subsequent creditor could reasonably and logically conclude that the parties inadvertently forgot to list the Corley gang saw, Delta feeder mechanisim and Detroit Allison diesel generator on the schedule, but did intend for this equipment to be covered.

The problem in each of these cases is that the intent of the parties is ambiguous. The use of both a schedule listing specific items of collateral and an omnibus clause describing a general type of collateral creates ambiguity when a specific item fails to appear on the schedule but is ostensibly covered by the omnibus clause.

Because this ambiguity concerns the intent of the parties, it may be subject to resolution by further factual inquiry. It is important to note that the bankruptcy court described the scope of the security agreement in terms of the intent of the parties. *See also Nolin Production Credit*, 726 S.W.2d at 700; *Horse Cave State Bank*, 672 S.W.2d at 67. This focus on intent appears correct because "the security agreement embodies the intention of the parties." *Laminated Veneers*, 471 F.2d at 1125. When the language of the security agreement is ambiguous, so is the intent of the parties. Generally "[c]ourts are not required to consider the language of the security agreement *and* the intent of the parties." *In re Gordon Car and Truck Rental Inc.*, 80 B.R. 12, 17 (N.D.N.Y.1987) (emphasis in original). Inquiry into the intent of the parties "is only made when ... there is ambiguity in the security agreement." *Id.*

Accordingly, we remand this case to the bankruptcy court to resolve the ambiguity in this case. An evidentiary hearing shall be held to determine whether or not Citizens and Gibson Lumber intended their security agreement of December 31, 1982 to encumber the Corley gang saw, the Delta feeder mechanism, and the Detroit Allison diesel generator in question. In the absence of clear and convincing evidence that the parties did intend the property in question to be encumbered by a security interest, the ambiguity shall be resolved against the creditor, in this case Citizens.

◼ The justification for allocating the burden of ambiguity in such a situation is found in the purpose and underlying scheme of the Uniform Commercial Code. A major purpose of Article 9 of the U.C.C. is to protect those creditors who obtain security interests and who provide adequate notice to subsequent potential creditors that certain property is encumbered. If such notice is properly completed, the creditor perfects his or her security interest and receives a priority interest in the collateral over competing third parties. If a security agreement contains an omnibus

clause as well as a schedule of specific collateral which does not list all that the omnibus clause ostensibly describes, then the initial creditor has failed to provide adequate notice to subsequent creditors. Where an inquiry into the intent of the parties fails to show by clear and convincing evidence that certain specific collateral not listed on the schedule was encumbered, then the ambiguity shall be construed against the initial creditor.