FEDERAL DEPOSIT INSURANCE CORPORATION vs. JOHN E. HILL.

Middlesex. March 10, 1982. — May 11, 1982.

Present: HALE, C.J., CUTTER, & ARMSTRONG, JJ.

*Evidence,* Extrinsic affecting writing. *Uniform Commercial Code,* Secured transactions, Security interest. *Guaranty.*

At the trial of an action to enforce a guarantor's liability on a promissory note, no error appeared in the judge's exclusion of parol evidence offered to resolve a purported ambiguity in the scope of the collateral of a security agreement accompanying the note, where no ambiguity was apparent in either document. [517]

Where language in a security agreement described the collateral as including a lease of restaurant equipment by the debtor as lessor, as well as "all personal property" owned by the debtor, the collateral included the leased equipment. [517]

Provisions in a promissory note and in a guaranty, taken together, constituted a waiver by the guarantor of any right he may have had under G. L. c. 106, § 3-306, to be discharged by reason of the secured party's impairment of the collateral. [518-519]

A bank's security interest in a lease of restaurant equipment did not put the bank in "possession" of the lease so as to give rise to a duty under G. L. c. 106, § 9-207 (1), to perfect a security interest in the equipment. [519]

CIVIL ACTION commenced in the Superior Court Department on November 9, 1978.

The case was heard by *O'Neill,* J., a District Court judge sitting under statutory authority.

*George C. Deptula (Richard D. Clarey* with him) for the defendant.

*Jordan L. Shapiro* for the plaintiff.

HALE, C.J. This is an action to enforce an agreement under which the defendant personally guaranteed a promissory note executed by him in 1975 in his capacity as president

of Leisure Resources, Inc. (Leisure). Following a trial without jury in the Superior Court, judgment entered for the plaintiff in the amount of $20,000. On appeal the defendant claims several errors relating to (a) the judge's exclusion, on parol evidence grounds, of testimony offered to resolve a purported ambiguity in the extent of the collateral identified by a security agreement accompanying that note and (b) the judge's determination that the defendant was not discharged from his obligation under the guaranty by reason of the failure of the holder of the note, the New Boston Bank and Trust Co. ("the bank," represented here by the plaintiff in its capacity as liquidating agent) to perfect a security interest in certain equipment "leased" by Leisure to a corporation doing business in Alabama. We reject these contentions and affirm the judgment. However, we do so for reasons slightly different from those expressed by the Superior Court judge.

The parties originally submitted the case to the judge on a statement of agreed facts. On the defendant's motion, however, the judge consented to reopen the case for the introduction of additional evidence and heard the testimony of two witnesses called by the defendant. In his memorandum of decision, the judge stated that the testimony did not add anything material to the case and that he was basing his decision on the parties' agreed facts. Accordingly we will summarize the agreed facts and review the oral testimony only to the extent necessary to consider the issues raised on appeal.

At all times relevant to this action, Leisure was a Massachusetts corporation engaged in the design and construction of outdoor recreational equipment, and the defendant was Leisure's president. In April, 1975, Leisure "leased" some equipment to G.S.R., Inc. (GSR), a corporation operating a fast-food restaurant in Dothan, Alabama.[1] Approxi-

---

[1] Among other things, the lease gave GSR the option to accelerate the expiration date of the lease by remitting the unpaid balance of the "rent" to Leisure. Upon exercising that option the lease provided that title to the

mately three months later, Leisure discounted the Alabama lease with the bank, borrowing an unspecified amount of money and giving back to the bank a $32,496 promissory note secured by the Alabama lease and a security agreement granting the bank a security interest in all of Leisure's personal property. The defendant personally guaranteed payment of that note, signing a guaranty which, among other things, provided that the defendant agreed to all "the terms and conditions of the . . . note and to all of the obligations entered into therein by [Leisure]." Immediately after the execution of those agreements the bank perfected its security interest in the lease by filing financing statements at the office of the Secretary of the Commonwealth and at the office of the city clerk of Boston. The bank billed Leisure for the fees required to make those filings, and Leisure reimbursed the bank in full. The bank never filed any financing statement in Alabama covering the lease or the leased equipment and never billed Leisure for any filing other than those made in Massachusetts.

The financing arrangement proceeded without serious difficulty for approximately two years. In August, 1976, Leisure assigned its right to payment under the Alabama lease to the bank, which issued a payment book to GSR and began to receive payments directly from it. In September, 1976, the bank failed and the plaintiff was appointed as its liquidating agent. Despite these developments, however, GSR continued to make regular payments directly to the bank and, after the bank's failure, to the plaintiff.

Problems did develop, however, in 1977, when GSR began to experience serious financial difficulties. Those dif-

---

equipment would "vest" in GSR. This provision raises a substantial question as to whether the lease was in actuality a conditional sale contract subject to the provisions of art. 9 of the Uniform Commercial Code. See White & Summers, Uniform Commercial Code § 22-3 (2d ed. 1980). However, in our view resolution of the case is not affected by the characterization of the agreement between Leisure and GSR as a lease or a conditional sale contract. Accordingly, we find it unnecessary to reach that question and shall refer to the April, 1975, agreement as "the lease."

ficulties ultimately resulted in GSR's being declared a bankrupt and, on or about April 24, 1978, in the trustee in bankruptcy's taking title to the leased equipment. At the time the trustee took title to the equipment, its value was more than adequate to pay off the balance owed by GSR to Leisure (and owed by Leisure to the bank). When GSR ceased making payments, the plaintiff demanded that the defendant fulfil his obligations under the guaranty.

1. There was no error in the rulings concerning parol evidence. The testimony excluded by the judge consisted of several statements allegedly made in the course of the negotiation of the note and the security agreement in which the bank purportedly assumed responsibility for perfecting security interests in *both* the lease and the leased equipment. The defendant offered that testimony to resolve what he perceived to be an ambiguity in the scope of the collateral identified in the security agreement as having been given by Leisure to secure its promissory note. We perceive no ambiguity in either the note or the security agreement. Hence we believe that the judge properly excluded evidence offered to show the intent of the contracting parties concerning the extent of the collateral. *Dekofski* v. *Leite*, 336 Mass. 127 (1957). *Pagliarulo* v. *National Shawmut Bank*, 353 Mass. 449 (1968). *Plasko* v. *Orser*, 373 Mass. 40, 44 (1977). *Johnson* v. *Worcester Business Dev. Corp.*, 1 Mass. App. Ct. 527, 529 (1973). *Frank Constr. Corp.* v. *Republic Powdered Metals, Inc.*, 11 Mass. App. Ct. 972 (1981).

2. While we agree with the judge's determination that the security agreement was unambiguous and a complete integration of the agreement, we cannot concur with his interpretation that the collateral identified in the security agreement did not include the leased equipment. That agreement, which was largely a printed form supplied by the bank, specifically provided that, in addition to the lease, the collateral given for the note included "all personal property" owned by Leisure and any additions, accessions, or substitutions thereto. That language encompassed the leased Alabama equipment.

As we conclude that Leisure gave the bank a security interest in the leased equipment to secure repayment of its promissory note, we now consider whether the bank's failure to perfect that security interest impaired the collateral and thus discharged the defendant from his obligations under the guaranty. We agree with the Superior Court's determination that, under the terms of the guaranty (and the note which it incorporated), the defendant waived any right he may have had to be discharged under G. L. c. 106, § 3-606(1)(b), inserted by St. 1957, c. 765, § 1.[2] The note stated that the bank "had no duty as to the collection or protection of collateral held [to secure the note] or any income thereto nor as to the preservation of any rights pertaining thereto beyond the safe custody thereof." The guaranty empowered the bank to "release, surrender or exchange" any of the collateral without notice to the defendant and without impairing his obligation to pay. Taken together, those provisions constitute a clear and unequivocal waiver by the defendant of any right he may have had to be discharged under § 3-606 by the bank's impairment of collateral. See *Greene* v. *Bank of Upson*, 231 Ga. 287 (1973); *Etelson* v. *Suburban Trust Co.*, 263 Md. 376 (1971); *American Bank of Commerce* v. *Covolo*, 88 N.M. 405 (1975). Cf. *D.W. Jaquays & Co.* v. *First Security Bank*, 101 Ariz. 301 (1966); *Langeveld* v. *L.R.Z.H. Corp.*, 74 N.J. 45 (1977); *Executive Bank* v. *Tighe*, 66 App. Div. 2d 70 (N.Y. 1978). That conclusion also disposes of the defendant's contention that the bank and, in turn, the plaintiff are estopped to deny the bank's purported obligation to perfect a security interest in the Alabama equipment because of several statements allegedly made by the bank's representatives during the negotiation of those agreements. The defendant cannot, at least in the absence of fraud, evade the parol evidence

---

[2] "Section 3-606. Impairment of Recourse or of Collateral.

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

rule merely by alleging an estoppel. See *Cass* v. *Lord*, 236 Mass. 430, 433-434 (1920); *Alpert* v. *Radner*, 293 Mass. 109, 112 (1936). Cf. *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. 52 (1941).

3. We also believe that the defendant's assertion that G. L. c. 106, § 9-207(1), as appearing in St. 1959, c. 580, § 8,[3] obligated the bank to perfect a security interest in the Alabama equipment is without merit. Even if we were to assume that the waiver provisions of the guaranty and the note could not relieve the bank of whatever obligation it may have owed to the defendant under § 9-207(1), see G. L. c. 106, § 1-102(3), there was ample basis for the judge's finding that the bank's interest in the lease was at all times nonpossessory. Although there may be instances in which a secured party is "in possession" for purposes of § 9-207 even though the debtor retains physical control of the collateral, see *First Natl. Bank* v. *Helwig*, 464 S.W. 2d 953 (Tex. Civ. App. 1971), this is not one of them. The only interest that the bank had in the lease was the right to receive rental payments directly from GSR. In our view that interest, which did not amount to an assignment of the lease itself, is simply insufficient to constitute the primary care and control necessary to activate § 9-207(1).

*Judgment affirmed.*

---

[3] "Section 9-207. Rights and Duties When Collateral is in Secured Party's Possession.

"(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed."