**In the Matter of Jonathan GOOGEL, Debtor.**

**BOSTON SAFE DEPOSIT AND TRUST COMPANY, Movant,**

v.

**Jonathan GOOGEL, Respondent.**

Bankruptcy No. 2–90–01981.
Motion No. 2–90–750M.

United States Bankruptcy Court,
D. Connecticut.

Aug. 5, 1991.

Robert E. Thorne, Boatman, Boscarino & Thorne, Glastonbury, Conn., and Mark A. Berthiaume, Goldstein & Manello, Boston, Mass., for movant.

Neal Ossen, Ossen & Murphy, Hartford, Conn., for debtor-respondent.

MEMORANDUM OF DECISION
ON MOTION FOR RELIEF
FROM STAY

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

This is a proceeding in which Boston Safe Deposit and Trust Company (the Bank) seeks relief from stay in order to enforce alleged rights either as a secured creditor or as a creditor entitled to assert setoff. Jonathan Googel, the debtor, denies that the Bank is a secured creditor contending no security agreement exists for the claimed collateral. The debtor also

denies there are mutual debts to which the Bank may apply any right of setoff.

## II.

### BACKGROUND

The debtor had retained the Bank under an Investment Management Agreement (the Agreement) dated February 27, 1985 to invest and reinvest property received from the debtor in return for stated commissions. The Agreement, which designated the debtor as the "Owner" and the Bank as the "Agent," was terminable at will on written notice by either party, and provided that the Bank collect and disburse income, return any property to the debtor upon request and submit periodic financial accounts. The Bank was authorized to register securities in the name of a nominee.

A Bank officer testified that the Bank's general practice under the Agreement was to buy and sell investment stocks, bonds and U.S. Treasury Bills for the debtor's account, with any documents for such generally remaining at Depository Trust Company—a clearing corporation.[1] The Bank periodically placed unutilized cash in an interest-bearing cash reserve fund.[2]

The Bank, in 1985, had granted the debtor a credit line of $3,000,000. In 1988, the Bank increased the credit line to $5,000,000 and utilized its form Revolving Demand Loan Note (the Note). The Note executed by the debtor was dated December 6, 1988, and required that the debtor on demand pay all sums borrowed up to the $5,000,000 limit, together with interest at one-quarter percent above the Major Bank Prime Rate as defined in the Note. Without demand, the Note called for monthly interest payments only. A clause in the Note entitled, "SETOFF RIGHT," stated: "To the extent permitted by law, the Bank has the right to apply funds from any deposit account(s) of the Undersigned with the Bank to pay all or any portion of any amount overdue under this note." Under the heading of "COLLATERAL," another provision of the Note stated that if either of two boxes located on the Note were checked, payment of the Note was "secured by property as described below ('Collateral')." Spaces were provided next to and below the boxes for descriptions of collateral to be inserted. Neither of the boxes was checked and no property was described.

The Bank sent a letter dated December 6, 1988 to the debtor to accompany the enclosed Note and to explain its terms and conditions. The letter referred to the Note as "this unsecured facility." The debtor was requested to furnish the Bank on an annual basis an "updated Personal Finance Statement and a complete copy of your most recent Federal partnership tax return...."

On September 13, 1990, the date petitioning creditors filed an involuntary chapter 7 petition against the debtor, the balance due under the Note amounted to $5,060,376. The value of the debtor's property managed on that date by the Bank totaled about $1,430,000.[3] The Bank apparently purchased only United States Treasury Bills for the debtor's account after September 13, 1990. On or about November 14, 1990, the Bank filed the instant motion for relief from stay.

The court entered an order for relief on the creditors' involuntary petition against the debtor on April 5, 1991, and the debtor immediately converted his case to one under chapter 11. The court, on June 28, 1991, reconverted the debtor's case on a creditor's motion from chapter 11 to one under chapter 7, but stayed that order until August 15, 1991.

---

1. "A clearing corporation is a special kind of financial intermediary. It holds securities on deposit from banks, brokers, and other financial institutions and clears trades among its depositors by making entries on its books." R. Alderman, *A Transactions Guide To The Uniform Commercial Code*, § 6.63 (1982). *See* Mass.Gen.Laws Ann. ch. 106, §§ 8–102(3), 8–320 (West 1990).

2. The Bank's witness did not otherwise describe the cash reserve fund except to state it was not a "checking account."

3. The Bank had, at the debtor's request, during August 1990 liquidated securities and remitted $604,700 in cash to him.

## III.

## DISCUSSION

### A.

*Whether The Bank Is A
Secured Creditor*

■ The Bank's assertion that it is a secured creditor relies upon the argument that, notwithstanding the lack of a checkmark in the boxes to denote that the Note was secured, and the Bank letter accompanying the Note referring to the loan transaction as an unsecured one, the Note may still constitute a security agreement. March 7, 1991 Bank Memorandum at 7. The Bank claims the following sentence in the COLLATERAL clause grants the Bank a security interest: "The Collateral and any other property belonging to, standing in the name of or pledged on behalf of the Undersigned, which is now or may hereafter be in possession of the Bank for any purpose, together with all additions or accessions thereto, shall constitute continuing security for any and all Liabilities of the Undersigned."

I conclude this contention is unsustainable. The most reasonable construction to be given the quoted sentence assumes that the collateral clause boxes have been checked, and the Bank wished to sweep in additional collateral for the "continuing security." Even if the sentence may possibly be read as if the Bank intended that not-

withstanding the lack of any checkmark a security interest be created in nondescribed debtor's property if in the Bank's possession, the letter sent to the debtor clearly negates any such reading in this matter. *See Robert Industries, Inc. v. Spence,* 362 Mass. 751, 291 N.E.2d 407, 409 (1973) (circumstances of transaction admissible to explain any uncertainty or ambiguity); *Eames & Woodcock Ins. Agency v. Alles,* 40 U.C.C.Rev.Serv. 1438, 1443 (Mass.Super.Ct.1984) (promissory note reciting no security and listed on the bank's records as unsecured did not constitute security agreement). In addition, Mass.Gen.Laws Ann. ch. 106, § 8–313(1)(j) (West 1990)[4] requires that a security agreement involving securities contain "a description of the security," and the phrase "any other property" would not satisfy that requirement.[5]

### B.

*Whether Bank Has Setoff Rights*

■ Bankruptcy Code § 553 provides that a creditor's right "to offset a mutual debt owing by such creditor to the debtor" is not affected by the Bankruptcy Code, with exceptions not relevant here. Setoff is not available under the facts of this proceeding because no mutual debt exists between the Bank and the debtor. The debtor's property which the Bank managed remains property of the debtor, and cannot be converted into a debt from the Bank to

---

**4.** The Bank, in its March 7, 1991 Memorandum at 7, claims that it is a "financial intermediary" which implicates this statute. Mass.Gen.Laws. Ann. ch. 106, § 8–313 (West 1990) provides in relevant part:

(1) Transfer of a security or a limited interest, including a security interest therein to a purchaser occurs only:

. . . .

(j) with respect to the transfer of a security interest where the secured party is a financial intermediary and the security has already been transferred to the financial intermediary . . ., at the time the transferor has signed a security agreement containing a description of the security and value is given by the secured party.

. . . .

(4) A "financial intermediary" is a bank, broker, clearing corporation or other person, or the nominee of any of them, which in the

ordinary course of its business maintains security accounts for its customers and is acting in that capacity. A financial intermediary may have a security interest in securities held in account for its customer.

**5.** The Bank relies on *FDIC v. Hill,* 13 Mass.App. 514, 434 N.E.2d 1029, *review denied,* 386 Mass. 1104, 440 N.E.2d 1177 (1982), for the proposition that "all personal property" can suffice as an adequate description of property in a security agreement. *Hill* is inapposite in that the court stated only that "all personal property" is sufficient to cover leased property where the lease is clearly recited in the security agreement. Furthermore, the Bank assumes that an adequate description of the "collateral" under Article 9 would necessarily serve as an adequate description of the "security" under Article 8, where the latter term is more narrowly defined. *See* Mass.Gen.Laws.Ann. ch. 106, §§ 9–110, 9–105(1)(c) and 8–102(1)(c) (West 1990).

the debtor. It is well established that when an agent or bailee has possession of, but no interest in, a debtor's property, such property is not subject to setoff of any debt owing to the agent or bailee. *See In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 848 (Bankr.S.D.N.Y.1990) and cases cited. (Where bank in possession of debtor's property as bailee or constructive trustee, without color of lien, the bank does not owe a mutual debt to the debtor because title to the property does not lie in the bank but in the debtor.)

The setoff provision contained the Note allows the Bank to apply funds from "deposit accounts" to the overdue amounts under the Note. This provision is inapplicable as none of the debtor's property managed by the Bank were in deposit accounts.[6]

### IV.

The bank's motion for relief from stay must be, and hereby is, denied.

---

**6.** *Cf.* Mass.Gen.Laws Ann. ch. 106, § 9–105(1)(e) (West 1990). " 'Deposit account' means a demand, time, savings, passbook or like account maintained with a bank ... other than an account evidenced by a certificate of deposit." The Note provided that it "shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts."