In re LEGAL DATA SYSTEMS, INC., Debtor.

Bankruptcy No. 90–11085–JNG.

United States Bankruptcy Court, D. Massachusetts, E.D.

Dec. 16, 1991.

Order Dec. 20, 1991.

Elliot S. Silverstein, Karger & Silverstein, Boston, Mass., for Digital Equipment.

Joseph S.U. Bodoff, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for debtor.

Ellen O. Harder, Sherin and Lodgen, Boston, Mass., for trustee.

Stephen Darr, CPA, Seidman & Seidman, Boston, Mass., Chapter 11 Trustee.

Robert J. Diettrich, Davis, Malm & D'Agostine, Boston, Mass., for Olympic International Bank & Trust Co.

## MEMORANDUM DECISION REGARDING EXTENT OF LIEN OF OLYMPIC INTERNATIONAL BANK AND TRUST COMPANY

WILLIAM C. HILLMAN, Bankruptcy Judge.

Olympic International Bank & Trust Company ("Olympic") filed a motion for relief from stay seeking permission to foreclose on its security interest in certain assets of the debtor. An objection was filed and the matter was heard by the late Judge James N. Gabriel who reserved decision. The Court has been provided with a transcript of that hearing, the exhibits, and the post-hearing memoranda filed by various parties, and has had the benefit of further argument.

Since the time of the hearing before Judge Gabriel a number of events have occurred, the sum of which is that the Court has been asked to determine only the extent and validity of the security interest of Olympic in certain assets of the debtor.

### FINDINGS OF FACT

On February 18, 1986, the debtor and certain individuals borrowed $500,000 from Olympic. The loan is represented by their note and various security documents. Of particular interest in the immediate matter are the security agreement and the financing statements.

The security agreement defines the "Collateral" as including "all of the Debtor's properties, assets and rights of every kind and nature, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, includ-

ing, without limiting the generality of the foregoing...."

The itemized sub-groups were, with minor rephrasing and with the bracketed numbers added for clarity:

[1] all inventory

[2] all accounts receivable

[3] all contract rights

[4] all other rights to the payment of money, including without limitation amounts due from affiliates, tax refunds and insurance proceeds

[5] all interest in goods as to which an account receivable shall have arisen

[6] all files, records (including without limitation computer programs, tapes and related electronic data processing software) and related writings

[7] all goods, instruments, documents of title, policies and certificates of insurance, securities, chattel paper, deposits, cash or other property which are now or may hereafter be in the possession of Olympic

[8] all general intangibles (including without limitation any rights to retrieval from third parties of electronically processed and recorded information pertaining to any of the foregoing types of collateral)

[9] any property, real or personal, tangible or intangible, in which Olympic now has or hereafter acquires a security interest.

The financing statements filed with the Secretary of State and the Boston City Clerk contain three elements: A claim to "all of Debtor's collateral whether now existing or hereafter arising of every kind and nature including, without limitation, the attached schedules"; a schedule closely resembling the security agreement language quoted above; and a six page schedule of specific items.

## DISCUSSION

The objecting creditor, Digital Equipment Corporation ("Digital"), takes the position that, notwithstanding the verbosity of the collateral description quoted, the fact that the word "equipment" is not mentioned indicates that there has been no attachment of the security interest to equipment, furnishings and fixtures. It points out that the detailed list of equipment is not a part of the security agreement and so cannot solve the attachment problems caused by the purportedly defective language. It relies primarily upon two theories. First, that the description given is not "reasonably specific," citing *Commercial Trading Co. v. Bassin (In re Laminated Veneers, Inc.)*, 471 F.2d 1124 (2d Cir.1973). Second, it contends that Olympic, having failed to specify "equipment," cannot rely upon its claim to an interest in "any property" of the debtor.

■ Preliminarily, the Court notes that Digital is correct in one respect—a broader description in a financing statement will not expand the reach of a security agreement. *Federal Land Bank v. Bay Park Place, Inc.*, 162 Mich.App. 1, 412 N.W.2d 222 (1987).

Digital's reliance upon *Laminated Veneers* is misplaced for two reasons. First and primarily, that case involved the non-inclusion of specific items in a list where the omnibus clause *did* include the U.C.C. generic "equipment." Second, that case, often criticized, retains very little vitality after *In re Sarex Corp.*, 509 F.2d 689 (2d Cir.1975).

■ Nevertheless, there is no specific language in the financing documents as quoted above which would encompass equipment. While "equipment" is a subclass of "goods," MGLA c. 106, § 9–109(2), Item [7] quoted above is limited to "goods ... which are now or may hereafter be in the possession of Olympic." There is no suggestion that Olympic had actual possession of the equipment in question.

■ Olympic must rise or fall on its general introductory description—"all of the Debtor's properties, assets and rights of every kind and nature...."

There is a problem with reliance upon "all property" as a description in a financing statement. Such phrases, described as "super-generics," B. CLARK, THE LAW OF SECURED TRANSACTIONS UNDER

THE UNIFORM COMMERCIAL CODE ¶ 2.9[5][c] (2d ed. 1988), have often been held utterly insufficient. *See* W. HILLMAN, DOCUMENTING SECURED TRANSACTIONS 18–6 (1991) and cases cited therein.

The Court has never understood the majority view. The statutory requirement is that a security agreement contain a description of the collateral which reasonably identifies what is described. MGLA c. 106, §§ 9–203(1)(a); 9–110. A financing statement must indicate the types, or describe the items, of collateral. MGLA c. 106, § 9–402(1).

One of the basic words in English is "all." It is actually easier to understand "all" than a compilation of all of the U.C.C. generics. Why must a security document state $1 + 1 + 1$ when 3 is easily understood? [1]

The Court finds that "all of the Debtor's properties, assets and rights of every kind and nature" includes equipment, even if the specific generic is not used. *Accord, Federal Deposit Ins. Corp. v. Hill*, 13 Mass. App.Ct. 514, 517, 434 N.E.2d 1029 (1982), *app. den.* 386 Mass. 1104, 440 N.E.2d 1177 (1982); *Herrell v. Bank of Elroy (In re Mitchell Bros. Const.)*, 52 B.R. 92 (Bankr. W.D.Wis.1985); *Leasing Serv. Corp. v. American Nat'l Bank*, 19 U.C.C.Rep. 252 (D.N.J.1976); *In re JCM Coop., Inc.*, 8 U.C.C.Rep. 247 (W.D.Mich.1970); *In re Parsons College*, 1 B.C.D. 122 (Bankr. S.D.Iowa 1974).

### CONCLUSION OF LAW

Olympic's security interest extends to all of the personal property of the debtor of whatever nature.

### ORDER

In accordance with the memorandum dated December 16, 1991, the Court hereby allows the Motion of Olympic Bank & Trust Company for Relief from Stay.

---

**1.** There is a T-shirt available in resort areas with the legend: "What part of NO don't you understand?"