In re Herbert Herman WEISBERG;
Delphine Ruth Weisberg,
Debtors,

Edward M. WOLKOWITZ, Trustee;
Plaintiff–Appellant,

and David R. Weinstein, Appellant,

v.

SHEARSON LEHMAN BROTHERS,
INC., Defendant–Appellee.

No. 96–55528.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1998.

Decided Feb. 17, 1998.

David R. Weinstein, Weinstein & Eisen, Los Angeles, CA, for plaintiff-appellant.

Stacey M. Garrett, Keesal, Young & Logan, Long Beach, CA, for defendant-appellee.

Before: LAY,* GOODWIN and SCHROEDER, Circuit Judges.

LAY, Circuit Judge:

This case concerns the applicability of the automatic stay provision under 11 U.S.C. § 362 to the liquidation of a debtor's shares of stock by a stockbroker under a "margin loan."

Herbert Herman Weisberg ("Weisberg") entered a "Client Agreement" with Shearson Lehman Brothers, Inc. ("Shearson"), a licensed stockbroker, and placed shares of stock in a cash account with Shearson. The Client Agreement contained terms by which a customer could purchase, sell, or borrow securities as well as borrow against securities. On or about October 8, 1990, Weisberg borrowed $50,000 from Shearson and transferred the stock in his cash account into a margin loan account to secure the loan.

Shearson required Weisberg to maintain at least 35% of the account's total market value in the account. Under the terms of the Client Agreement, if the account's market value were to fall, Shearson would issue a "margin call" to Weisberg to deposit cash or other equity in the account to increase the equity and reduce the margin. If Weisberg did not respond to the call within four days, the agreement authorized Shearson to liquidate shares of the stock and apply the proceeds to the margin debt to restore the 35% equity ratio.

On November 26, 1991, Weisberg filed for bankruptcy. Between December 1991 and October 1992, Shearson issued fourteen margin calls on Weisberg's account. Weisberg, as well as the bankruptcy trustee, did not

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

respond to any of the calls. Shearson liquidated limited amounts of Weisberg's shares of stock to cover each margin call and to reestablish the equity ratio in Weisberg's account. Shearson did not seek relief from the automatic stay before liquidating Weisberg's stocks.

The trustee filed a complaint alleging, in part, that Shearson had violated the automatic stay by liquidating Weisberg's stocks to cover the margin calls. Shearson and Weisberg filed cross-motions for summary judgment. The bankruptcy court granted Shearson's motion, finding that Section 362(b)(6) expressly allowed Shearson to liquidate the stocks without obtaining relief from the automatic stay. The bankruptcy court also concluded that imposition of Rule 9011 sanctions were warranted because Section 362(b)(6) resolved the issue presented by the trustee's complaint.

The bankruptcy court gave the parties the opportunity to reach a settlement, off the record, regarding the payment of the sanctions. In so doing, the bankruptcy court instructed the parties that any settlement would be in lieu of a court order and would not be subject to appeal. The trustee did not object to this proposal. During recess, the parties reached a settlement by which the trustee's counsel would pay approximately $11,000 to Shearson. The bankruptcy court entered summary judgment in favor of Shearson, and the judgment stated the parties had resolved the issue of sanctions off the record.

Thereafter, the trustee filed a motion under Rule 9023 and Fed.R.Civ.P. 59(e) to alter or amend the summary judgment order to include reference to the imposition of the sanctions. The bankruptcy court concluded the trustee's motion was frivolous, denied the motion, and imposed additional sanctions on the trustee and his counsel.

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court's grant of summary judgment on the ground that Section 362(b)(6) allowed Shearson to liquidate Weisberg's securities without obtaining relief from the automatic stay. *In re Weisberg*, 193 B.R. 916, 925 (B.A.P. 9th Cir.1996). The BAP also concluded that even if Section 362(b)(6) did not apply, it would affirm the grant of summary judgment because the trustee was estopped from alleging damages for the violation of the automatic stay. *Id.* at 926. The BAP held it had no jurisdiction to review the stipulation between the parties as to the agreed upon sanctions, inasmuch as there was no appealable final or interlocutory order. *Id.* at 928. The BAP, however, affirmed the bankruptcy court's denial of the trustee's motion to amend or alter the summary judgment and imposition of additional sanctions or filing the motion. *Id.* at 929. The trustee appeals each of these decisions.

## DISCUSSION

This court independently reviews the BAP's decision. We review the BAP's findings of fact under a clearly erroneous standard and its conclusions of law *de novo*. *See United States v. Battley*, 969 F.2d 806, 810 (9th Cir.1992).

### A. *Applicability of Section 362(b)(6)*

Section 362(b)(6) of the Bankruptcy Code allows a stockbroker to make certain setoffs under a securities contract without obtaining relief from the automatic stay. Specifically, Section 362(b)(6) exempts:

> [T]he setoff by a ... stockbroker ... of any mutual debt and claim under or in connection with ... securities contracts, as defined in section 741 of this title, that constitutes the setoff of a claim against the debtor for a margin payment, as defined in section ... 741 ... of this title, ... arising out of ... securities contracts against cash, securities, or other property held by or due from such ... stockbroker ... to margin, guarantee, secure, or settle ... securities contracts. 11 U.S.C. § 362(b)(6).[1]

The trustee first argues the BAP erroneously concluded that mutual debts existed between Shearson and Weisberg such that

---

1. As the BAP noted, there is scant legal precedent interpreting Section 362(b)(6). *In re Weisberg*, 193 B.R. at 922.

setoff was appropriate under Section 362(b)(6). The BAP found that Shearson was obligated by the Client Agreement with Weisberg "to deal with the debt and the collateral in accordance with its terms," and that this obligation fell within the Bankruptcy Code's broad definition of a "debt."[2] *In re Weisberg*, 193 B.R. at 922. The BAP then concluded the Client Agreement created mutual obligations, which satisfied the mutual debt requirement of the Section 362(b)(6) exception. *Id.*

We agree with the BAP's findings. The Client Agreement imposed obligations upon Shearson that give rise to a potential claim against Shearson. At the time the bankruptcy petition was filed, any such claim against Shearson was unmatured. Under the Code's broad definition of "claim," however, it would appear that such an unmatured claim could form the basis of a "debt" for setoff purposes.[3] For these reasons, it does not appear the BAP erred in concluding mutual, pre-existing debts existed that Shearson was entitled to offset.

The trustee also argues the Client Agreement does not constitute a "securities contract" as defined by the Bankruptcy Code, and therefore, Section 362(b)(6) cannot apply to this case. Instead, the trustee argues, the $50,000 loan secured by Weisberg's stocks constituted a simple loan transaction, similar to a mortgage on real property. The BAP found that, while the Client Agreement did not technically fit the Code's definition of a securities contract,[4] the Client Agreement, in substance, involved the "purchase and sale" of securities and thus qualified as a securities contract. *In re Weisberg*, 193 B.R. at 923–24. In so doing, the BAP looked to securities law and found that the pledge of securities to secure a margin brokerage account constituted "purchase and sale" for the purposes of Section 10(b) of the Securities and Exchange Act. *See United States v. Kendrick*, 692 F.2d 1262, 1265 (9th Cir.1982).[5] By extension, the BAP concluded that the Client Agreement, in function, provided for the purchase and sale of Weisberg's securities, and thus constituted a securities contract. *In re Weisberg*, 193 B.R. at 925.

2. Section 101(12) of the Bankruptcy Code defines a "debt" as a "liability on a claim." Section 101(5) defines a "claim" as:

   (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
   (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5).

3. The cases cited by the trustee in support of its arguments, *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830 (Bankr.S.D.N.Y.1990) and *Boston Safe Deposit & Trust Co. v. Googel*, 130 B.R. 126 (Bankr.D.Conn.1991), are inapposite to this analysis. In both *Drexel* and *Googel*, the banks seeking setoff did not have a secured loan; they had no security interest in the collateral pledged for the loan. Therefore, the obligations imposed on the banks by virtue of a security agreement did not exist in those cases, as they do in this case. In *Drexel*, the court noted the bank held the collateral as a bailee or constructive trustee, without color of lien. 113 B.R. at 848. There could therefore be no mutual debt because the title to the property remained with the debtor. *Id.* In *Googel*, because title to the collateral

remained with the bankruptcy estate and not the bank, the collateral could not be converted into a debt owed from the bank to the debtor. 130 B.R. at 128–29. These decisions are not applicable to this case because Weisberg granted Shearson a security interest in his shares of stock.

4. Section 741(7) of the Bankruptcy Code defines a "securities contract" as a "contract for the purchase, sale, or loan of a security ... or the guarantee of any settlement of cash or securities by or to a securities clearing agency." 11 U.S.C. § 741(7).

5. In concluding the pledge of Weisberg's securities constituted a sale of securities, the BAP relied on cases interpreting "purchase and sale" of securities under the Securities and Exchange Act. *See In re Weisberg*, 193 B.R. at 923–25. Because there are no decisions interpreting the meaning of "securities agreements" for purposes of Section 362(b)(6), the BAP was correct to turn to securities law for guidance. Under that body of law, this court has held that a pledge of securities to secure a margin brokerage account constitutes a "purchase and sale" of securities. *United States v. Kendrick*, 692 F.2d 1262, 1265 (9th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983); *see First Baptist Church v. Keating*, 49 F.3d 541, 544 (9th Cir.1995); *Harmsen v. Smith*, 693 F.2d 932, 947 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

The legislative history of Section 362(b)(6) illuminates the harm Congress intended to avoid by providing the exception:

It is essential that stockbrokers and securities clearing agencies be protected from the issuance of a court or administrative agency order which would stay the prompt liquidation of an insolvent's positions, because market fluctuations in the securities market create an inordinate risk that the insolvency of one party could trigger a chain reaction of insolvencies of the others who carry accounts for that party and undermine the integrity of those markets.

128 Cong. Rec. § 15981, (daily ed. July 13, 1982)(remarks of Sen. Dole). Congress recognized that securities have a unique nature, either as bankruptcy estate property or as collateral, because of the rapid fluctuations of the securities market and the interdependent nature of those transacting in the market. In light of these unique characteristics, securities given as collateral should not be treated in the same manner as other, more stable collateral such as cash or real property.

■ We conclude that the transaction between Weisberg and Shearson is the type of transaction Congress intended to exempt from the automatic stay in Section 362(b)(6).[6] As a licensed stockbroker, Shearson is required by law to maintain a 35% equity ratio in its margin accounts. In order to do this, Shearson must be able to liquidate shares on short notice in the event the customer fails to add the requisite equity to the account. The need to readjust the equity ratio in any account may arise suddenly due to market fluctuations. This is the type of fluid market transaction Congress contemplated when it enacted Section 362(b)(6). That the securities in Weisberg's margin account were pledged as collateral for a loan is irrelevant. The Client Agreement authorized Shearson to sell Weisberg's securities in the event Weisberg failed to meet a margin call, and

therefore constituted in effect a securities agreement. The trustee cannot obviate the true nature of Weisberg's financial relationship with Shearson by characterizing the transaction as a simple loan transaction.

We affirm the BAP's conclusion that Section 362(b)(6) allowed Shearson to liquidate Weisberg's securities without first obtaining relief from the automatic stay. We therefore do not need to review the grant of summary judgment on the alternative ground that the trustee and Weisberg were estopped from alleging a violation of the automatic stay.

**B. Sanctions**

**1. Sanctions for Bringing Complaint**

■ In the proceedings below, the trustee asked the BAP to determine whether the bankruptcy court abused its discretion by requiring the trustee to pay sanctions, either voluntarily or by order, in light of the novel issue this case poses regarding the interpretation of Section 362(b)(6). The BAP refused to do so, finding it had no jurisdictional basis to review the sanctions settlement because it was not premised on an order of the court. *In re Weisberg*, 193 B.R. at 928. The trustee now asks this court to recognize such jurisdiction and reverse the bankruptcy court's imposition of sanctions.

This court's jurisdiction is limited in the same manner as the BAP's jurisdiction. Under 28 U.S.C. § 158, the courts of appeals have jurisdiction to review all final decisions, judgments, orders and decrees entered by district courts or bankruptcy appellate panels in connection with the review of orders and decrees issued by the bankruptcy judges. 28 U.S.C. § 158(d). This court, therefore, restricts its inquiry to whether the BAP correctly concluded that it lacked jurisdiction to decide this issue.

---

**6.** This holding does not contravene the principle that exceptions to the automatic stay are to be construed narrowly. *See Hillis Motors, Inc. v. Hawaii Automobile Dealers' Assoc.*, 997 F.2d 581, 590 (9th Cir.1993). The Code's definition of "security contract" includes a contract for the sale of securities. 11 U.S.C. § 741(7). The BAP concluded a pledge of securities to collateralize a margin account constitutes a "sale of securities"

for purposes of Section 362(b)(6). This interpretation does not stretch the plain meaning of Section 741, nor read provisions into the Section where none exist. This interpretation is also consistent with the legislative intent behind the Section 362(b)(6) exemption and the underlying nature of the financial transactions between Weisberg and Shearson.

The BAP found that the trustee elected to pursue a settlement arrangement for the payment of sanctions rather than having the bankruptcy court impose sanctions by order. *In re Weisberg,* 193 B.R. at 928. The bankruptcy court informed the trustee that any payment of the sanctions under a settlement agreement would not be subject to appeal. The trustee did not object to those terms. As a result, the bankruptcy court did not expressly impose sanctions. The BAP concluded that without an order to review, it had no jurisdiction to review the imposition of sanctions. Title 28 U.S.C. § 158 strictly limits the actions the BAP has jurisdiction to review to orders and decrees issued by a bankruptcy judge. There was no such order for the BAP to review in this case. Therefore, the BAP did not err by declining jurisdiction to review the sanctions imposed on the trustee for filing the complaint.

### 2. *Sanctions for Motion to Amend Summary Judgment Order*

■ The trustee also contends the bankruptcy court abused its discretion by imposing additional sanctions on the trustee for bringing a frivolous Rule 59 motion. The trustee sought to amend the summary judgment order to reflect the payment of the first sanctions so that the trustee could appeal the imposition of those sanctions. We find that the trustee's attempt to create an appealable issue by filing the Rule 59 motion was not frivolous. We therefore reverse the bankruptcy court's order imposing sanctions on the trustee in the amount of $3,293. Each party shall pay its own costs on appeal.

The BAP's decision is AFFIRMED, in part and REVERSED, in part.