253 F.3d 507 (9th Cir. 2001)
 IN RE: MICHAEL W. SHEEHAN; WILHELMINA SHEEHAN, DEBTORS.
YOJI OYAMA, APPELLANT,
v.
MICHAEL W. SHEEHAN; WILHELMINA SHEEHAN, APPELLEES.
 No. 99-56391
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 14, 2001
Filed June 19, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 John R. Fuchs and Gail S. Gilfillan, Fuchs & Associates, Inc., Los Angeles, California, for the appellant.
 Todd C. Ringstad, Irvine, California, for the appellees.
 Appeal from the Bankruptcy Appellate Panel of the Ninth Circuit Elizabeth L. Perris, Christopher M. Klein, and Terry L. Myers, Bankruptcy Judges, Presiding. BAP No. CC-98-1480 PKMy; Adv. No. SA 97-2210 LR
 Before: Warren J. Ferguson, A. Wallace Tashima, and Raymond C. Fisher, Circuit Judges.
 
 
 1
 Opinion by Judge RASHIMA; Dissent by Judge FERGUSON
 
 Tashima, Circuit Judge
 I.
 
 2
 Appellant Yoji Oyama filed an adversary proceeding to determine the debt of Michael Sheehan non-dischargeable. Sheehan moved to dismiss for failure to serve the complaint on the debtor within the 120-day period provided in Rule 4(m) of the Federal Rules of Civil Procedure.
 
 
 3
 The bankruptcy court granted Sheehan's motion to dismiss, finding that there was no good cause under Rule 4(m) to extend the time period and that the excusable neglect provision of Bankruptcy Rule 9006(b) did not apply to a nondischargeability proceeding. The Ninth Circuit Bankruptcy Appellate Panel ("BAP") affirmed, finding that the required motion was not made under Rule 9006(b) and, alternatively, holding that the excusable neglect provision of Rule 9006(b) did not apply under Rule 4(m).
 
 
 4
 We have jurisdiction under 28 U.S.C. §§ 158(d), and we reverse. We hold that the bankruptcy court and the BAP erred in refusing to apply the excusable neglect provision of Rule 9006(b) in determining whether to enlarge the time for service.
 
 II.
 
 5
 In 1987, Oyama purchased a 1950 Ferrari from European Auto Sales & Restoration, Inc. ("European Auto") for $375,000. Sheehan was the president of European Auto. Oyama claimed that the purchase price included restoration of the Ferrari to its original condition. However, Oyama subsequently paid Sheehan an additional $181,000 over the purchase price for the allegedly incomplete restoration.[1]
 
 
 6
 In 1995, Oyama, attempting to pierce the corporate veil, sued Sheehan for his alleged failure to restore the car as promised. Oyama first filed a complaint in Orange County Superior Court. That case was removed to the United States Bankruptcy Court for the Central District of California, and is proceeding in the separate bankruptcy case of European Auto. In the instant proceeding, Oyama timely filed a nondischargeability complaint under 11 U.S.C. §§ 523 on November 3, 1997.
 
 
 7
 The original summons was issued on November 4, 1997. Oyama served the summons and complaint on Sheehan's attorney by mail on November 21, 1997. That service was defective, however, because it failed to comply with the requirement that service by mail must be made within 10 days following the issuance of the summons. See Bankr. R. 7004(e). Oyama then timely served a second summons and complaint on Sheehan's attorney, but failed to serve the debtor individually, as required by Rule 7004(b)(9), until six days after the expiration of the 120-day period prescribed by Rule 4(m). Sheehan filed a motion to dismiss for improper service under Rule 4(m). In opposition to that motion, Oyama argued that there was good cause for the failure, and that the court was therefore required to extend the time for service.[2]
 
 
 8
 At the hearing on the motion to dismiss, Oyama urged the bankruptcy court to consider the excusable neglect provision of Rule 9006(b), as articulated by the Supreme Court in Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship , 507 U.S. 380 (1993). The bankruptcy judge, stating that the excusable neglect provision was not applicable in the context of a nondischargeability proceeding, granted Sheehan's motion to dismiss. The BAP affirmed, agreeing that there was no good cause to extend, that Oyama did not bring a motion to enlarge, and that Pioneer did not apply to the Rule 4 service requirement. Oyama now appeals the BAP's decision.
 
 III.
 
 9
 We independently review a bankruptcy court's rulings on appeal from the BAP. Wolkowitz v. Shearson Lehman Bros. (In re Weisberg), 136 F.3d 655, 657 (9th Cir. 1998). Legal conclusions of the BAP are reviewed de novo. McClellan Fed. Credit Union v. Parker (In re Parker), 139 F.3d 668, 670 (9th Cir. 1998). Dismissal of a complaint for failure timely to serve summons and complaint is reviewed for abuse of discretion. Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994).
 
 IV.
 
 10
 The time for service in an adversary proceeding may be extended under two different rules: Rule 4(m) of the Federal Rules of Civil Procedure,[3] and Bankruptcy Rule 9006(b).[4] Bankruptcy Rule 7004(a) incorporates by reference Rule 4(m) into the Bankruptcy Rules.
 
 
 11
 Rule 4(m) requires a two-step analysis in deciding whether or not to extend the prescribed time period for the service of a complaint. See Fed. R. Civ. P. 4(m); Petrucelli v. Bohringer & Ratzinger, GmbH, 46 F.3d 1298, 1305 (3d Cir. 1995). First, upon a showing of good cause for the defective service, the court must extend the time period. Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period. Id.
 
 
 12
 Rule 9006(b) gives the court discretion to extend any time period stated in the rules upon a showing of excusable neglect. After the time period has expired, however, an extension can be granted only upon motion.
 
 
 13
 The issue in this case is whether the excusable neglect provision of Rule 9006(b) applies to the time period stated in Rule 4(m), despite the fact that Rule 4(m) contains its own good cause standard. Because established rules of statutory construction require us to read these rules as supplementing, rather than contradicting, each other, we hold that the excusable neglect provision of Rule 9006(b) applies to Rule 4(m).
 
 A. Good Cause Under Rule 4(m)
 
 14
 Oyama argues that the bankruptcy court abused its discretion by failing to find good cause to extend the service period. Oyama asserted that his attorney's busy schedule and seriously ill secretary amounted to good cause. We conclude that the bankruptcy court did not abuse its discretion in holding that no good cause was shown under Rule 4(m).
 
 
 15
 When considering a motion to dismiss a complaint for untimely service, courts must determine whether good cause for the delay has been shown on a case by case basis. Cartage Pac., Inc. v. Waldner (In re Waldner), 183 B.R. 879, 882 (9th Cir. B.A.P. 1995). We have recognized that "[a]t a minimum, `good cause' means excusable neglect." Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991). In Boudette , we stated that a plaintiff may be required to show the following factors in order to bring the excuse to the level of good cause: "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." Id. (citing Hart v. United States, 817 F.2d 78, 80-81 (9th Cir. 1987)).
 
 
 16
 The record indicates that Oyama failed to show these factors. We therefore affirm the bankruptcy court's holding that there was no good cause shown to extend the service period.[5]
 
 B. Discretion Under Rule 4(m)
 
 17
 Oyama further argues that the bankruptcy court abused its discretion by failing to extend the time period under the discretionary component of Rule 4(m). We hold that the bankruptcy court properly refused to exercise its discretion to extend the service period.
 
 
 18
 Courts have discretion under Rule 4(m), absent a showing of good cause, to extend the time for service or to dismiss the action without prejudice. Petrucelli, 46 F.3d at 1305. Although the rule does not contain the discretionary term "may," it requires that, absent good cause, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed. R. Civ. P. 4(m) (West Supp. 2000). We have not addressed what factors a court should consider when deciding to exercise its discretion under Rule 4(m). See Barr v. Barr (In re Barr), 217 B.R. 626, 630 (Bankr. W.D. Wash. 1998).
 
 
 19
 We find it unnecessary, however, to articulate a specific test that a court must apply in exercising its discretion under Rule 4(m). We note only that, under the terms of the rule, the court's discretion is broad. Cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400 (1990) (adopting a deferential standard for reviewing Rule 11 sanctions based on factual determinations). The facts of this case clearly do not mandate the exercise of discretion to extend the service period under Rule 4(m).
 
 C. Excusable Neglect Under Rule 9006(b)
 
 20
 In addition to Rule 4(m), the time for service may be extended under Bankruptcy Rule 9006(b) upon a showing of excusable neglect. Rule 9006(b) allows a court "on motion made after the expiration of the specified period[to] permit the act to be done where the failure to act was the result of excusable neglect." Bankr. R. 9006(b)(1) (West Supp. 2000). Subdivision (b) expressly excepts the time limits under certain rules from enlargement under this provision, and limits enlargement under other specific rules. Bankr. R. 9006(b)(2) & (3). Rule 4(m)[6] is not one of the provisions expressly excluded or limited by Rule 9006(b). Rule 9006(b) must therefore apply to Rule 4(m).
 
 
 21
 The Supreme Court articulated the excusable neglect standard of Rule 9006(b) in Pioneer. There, the Court held that, in determining the existence of excusable neglect, a court must examine four factors: "[1] the danger of prejudice to the debtor, [2] the length of delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." Pioneer, 507 U.S. at 395.
 
 
 22
 Both the bankruptcy court and the BAP erroneously ruled that the excusable neglect provision of Rule 9006(b) was inapplicable to Rule 4(m). The bankruptcy court distinguished Pioneer from the present case on the basis that Pioneer involved the late filing of a proof of claim, while this case involves a proceeding to determine nondischargeability under 11 U.S.C. §§ 523. It reasoned that §§ 523 contains a much shorter limitation period than other types of filings under the Bankruptcy Code; a creditor has only 60 days within which to file a proceeding to determine a debt non-dischargeable. The court therefore concluded that the Pioneer test was inapplicable in the unique context of a §§ 523 proceeding. We disagree. Nothing in Pioneer or §§ 523 suggests that the excusable neglect provision would not apply in nondischargeability proceedings.
 
 
 23
 The BAP similarly rejected Oyama's argument that the Pioneer excusable neglect test is applicable to the failure to make timely service. The BAP relied on Broitman v. Kirkland (In re Kirkland), 86 F.3d 172 (10th Cir. 1996), in stating that Pioneer's balancing test is not applicable when analyzing whether there is good cause for failure to make timely service. The BAP also cited United States ex rel. DeLoss v. Kenner Gen. Contractors, Inc., 764 F.2d 707, 711 (9th Cir. 1985), for the proposition that "after the 120-day period has expired, a trial court may grant an extension of time to serve a complaint only when a party has satisfied the good cause requirement of Rule 4(j). . . ."
 
 
 24
 The BAP's reliance on Kenner and Kirkland is problematic. These cases were decided before amended Rule 4(m) was incorporated by reference into the Bankruptcy Rules. Bankruptcy Rule 7004(g) specified that the provisions of Rule 4 in effect on January 1, 1990, apply, notwithstanding any subsequent amendment to Rule 4. The 1990 version of Rule 4(j) allowed for the extension of the 120-day service period only upon a showing of good cause. Because Rule 9006(b) permitted an extension upon a showing of excusable neglect, while Rule 4 allowed an extension only upon a showing of good cause, the rules created a "seeming incongruity." Artificial Intelligence Corp. v. Casey (In re Casey), 198 B.R. 918, 921 (Bankr. S.D. Cal. 1996). The 1993 amendment of Rule 4(m) was an attempt to cure this incongruity. This amendment added a discretionary component to Rule 4, so that the rule no longer required a showing of good cause to extend the time period. The amendment, however, only cured the conflict between Rules 4 and 6(b) of the Federal Rules of Civil Procedure. Bankruptcy Rule 7004(g) continued to incorporate only the 1990 version of Rule 4. In 1996, Rule 7004(g) was abrogated and the discretionary component of Rule 4(m) was incorporated by reference into the Bankruptcy Rules. Thus, Rules 9006(b) and 4(m) can now be read congruently.
 
 
 25
 Accordingly, if good cause is shown, a court shall extend the service period under Rule 4. If good cause is not shown, the court has the discretion to extend the time period. In addition, the court may extend the time limit upon a showing of excusable neglect under 9006(b).
 
 
 26
 Because it is possible to interpret Rule 9006(b) and Rule 4(m) without conflict, while giving meaning to both rules, this is the correct interpretation. Courts must interpret a congressional act, if possible, in a manner that gives each section its due effect without inconsistency or repugnancy. New Lamp Chimney Co. v. Ansonia Brass & Copper Co., 91 U.S. 656, 663 (1875). "A construction that creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the act, and will carry out the intention of Congress. " United States v. Raynor, 302 U.S. 540, 547 (1937).
 
 
 27
 We thus hold that the excusable neglect standard of Rule 9006(b) applies to the 120-day service period prescribed by Rule 4(m). To the extent that Kenner holds that Rule 9006(b) is inapplicable to Rule 4, it has been superseded by the amendment of Rule 4(m) and its incorporation by reference into the Bankruptcy Rules with the abrogation of Bankruptcy Rule 7004(g).
 
 D. The 9006(b) Motion Requirement
 
 28
 Sheehan argues that Oyama cannot avail himself of Rule 9006(b) because he never brought a separate motion, as required by the rule. We conclude, however, that the motion requirement was narrowly satisfied in this case.
 
 
 29
 Rule 9006(b)(1) provides that, after the expiration of the time period, the court may excuse the delay only"on motion made." No written Rule 9006(b) motion was filed in this case. Instead, Oyama's attorney urged the court to consider the excusable neglect standard during the hearing on Sheehan's motion to dismiss.
 
 
 30
 Normally, a bankruptcy court is not required to rule on an oral, non-trial motion. The local bankruptcy rules for the Central District of California provide that "[u]nless otherwise provided by rule or order of the Court, no oral motions will be recognized except during trial." C.D. Cal. Local Bankr. R. 9013-1 (2000).[7] In the present case, the bankruptcy judge admonished counsel at the hearing that "it is improper to argue anything that's not in your papers." The judge, nonetheless, then ruled on the oral motion despite its impropriety, ruling that the Pioneer test was not applicable in the context of a nondischargeability proceeding under §§ 523. Thus, the court effectively recognized the motion and denied it on the merits.[8]
 
 
 31
 Furthermore, as Oyama pointed out, all of the arguments for and against a Rule 9006(b) motion to enlarge would be identical to those made for and against Sheehan's motion to dismiss under Rule 4. This suggests that the concerns of notice and opportunity to respond to the motion were satisfied in this case.[9]
 
 
 32
 In light of the bankruptcy judge's ruling that the Pioneer standard did not apply to nondischargeability proceedings, it would have been futile for Oyama to submit a formal motion to enlarge for excusable neglect.
 
 V.
 
 33
 We hold that the bankruptcy court, after recognizing an oral motion to enlarge the time for service, abused its discretion by failing to apply the excusable neglect standard articulated by the Supreme Court in Pioneer in considering that motion.[10]
 
 
 34
 REVERSED and REMANDED for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The Ferrari eventually was completely restored in Japan. Oyama now regularly enters the automobile in historical events.
 
 
 [2]
 Oyama's attorney claimed that the oversight was due, in part, to his secretary's struggle with breast cancer.
 
 
 [3]
 Rule 4(m) provides:
 If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.
 Fed. R. Civ. P. 4(m) (West Supp. 2000).
 
 
 [4]
 Rule 9006(b) provides:
 (1) Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. (2) The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.
 (3) The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules.
 Bankr. R. 9006(b) (West Supp. 2000).
 
 
 [5]
 During oral argument, Sheehan's counsel conceded that Sheehan had actual notice of the complaint and was not prejudiced by the delay in service. Absent this concession, Sheehan could not be presumed to have actual notice merely because the complaint was served on his attorney. See Straub v. AP Green, Inc., 38 F.3d 448, 454 (9th Cir. 1994) (finding the fact that defendant's attorney contacted the court about the status of the case insufficient to establish that defendant had actual notice). Evidence that was not before the lower court will not generally be considered on appeal. See Karmun v. Commissioner, 749 F.2d 567, 570 (9th Cir. 1984). We therefore decline to rely on this concession in deciding this appeal.
 
 
 [6]
 Bankruptcy Rule 7004(a) incorporates Rule 4(m) by reference into the Bankruptcy Rules.
 
 
 [7]
 We note that this rule appears to be more restrictive than Bankr. R. 9013. Under Rule 9013, as under Fed. R. Civ. P. 7, oral motions are permitted at a recorded hearing or trial to expedite the proceedings. See Collier on Bankruptcy ¶¶ 9013.02 (15th ed. rev. 2000); Moore's Federal Practice §§ 7.03[2] (3d ed. 2000).
 
 
 [8]
 Because the bankruptcy court reached the merits of Oyama's argument that Pioneer applied to this case, as it was authorized to do under C.D. Cal. Local Bankr. R. 9013-1, despite the lack of a written motion, we disagree with the dissent's assertion that the "issue [was] not decided upon by the lower court." Dissenting Op. at 7763.
 
 
 [9]
 Sheehan conceded at oral argument that Oyama's opposition to his motion to dismiss set forth the same arguments as would be made in a separate motion under Rule 9006(b). Moreover, to the extent that "[c]counsel for the debtor did not receive fair notice of [Oyama's] excusable neglect argument . . . and had no opportunity to defend against" it, as the dissent argues, dissenting op. at 7766, Sheehan will have full opportunity to make any additional arguments on remand.
 
 
 [10]
 The dissent argues that Oyama has not met Pioneer's excusable neglect standard. See dissenting op. at 7763, 7766-68. This, however, is a determination that the bankruptcy court should make in the first instance.
 
 
 FERGUSON, Circuit Judge, dissenting:
 
 35
 I respectfully dissent.
 
 
 36
 Counsel for the creditor Mr. Oyama failed to effectuate timely service under Federal Rule of Civil Procedure 4(m). His explanation was that "secretaries are often the ones who follow the rules or are supposed to follow the rules for service" and the "serious illness by the sole secretary and extended trial appearances and trial scheduling by both lawyers in the office" caused the error. On appeal, counsel asks this Court to find that the bankruptcy court abused its discretion when it dismissed his complaint due to ineffective service.
 
 
 37
 The Bankruptcy Court, the Ninth Circuit Bankruptcy Appellate Panel, and the majority opinion of this Court properly found that under the good cause standard of Rule 4(m) "the facts in this case clearly do not mandate the exercise of discretion to extend the service period under Rule 4(m)." (Majority op. at 7757). However, the majority opinion does not stop at ruling on the issue before this Court. Instead, the majority goes on to find that Federal Rule of Bankruptcy 9006(b)'s excusable neglect standard applies to this case. This issue is not properly before this Court because counsel for the creditor never made the required motion to invoke Rule 9006(b) and this Court should not consider an issue not decided upon by the lower court. Moreover, I do not believe that counsel's conduct rises to the level of excusable neglect.
 
 I. Failure to Make a Motion
 
 38
 The majority finds that the bankruptcy judge recognized a Rule 9006(b) motion and denied it on its merits. This is baffling. There was no written motion presented to the court as required by the local bankruptcy rules. Nowhere in the briefs to the bankruptcy court or during oral argument was the term 9006(b) used. In fact, it was not until oral argument before the bankruptcy judge that the term excusable neglect was even mentioned. At that time, the bankruptcy judge admonished counsel that "it is improper to argue anything that's not in your papers" and then went on to say that she did not think the excusable neglect standard applied to good cause and she was not going to consider it.
 
 
 39
 Courts strictly adhere to the requirement that a motion be made to invoke a rule. There are numerous examples where failure to make a motion has denied a party the ability to pursue a particular course of action. See e.g., Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 217 (1947) (holding that the absence of a motion for judgment notwithstanding the verdict left the appellate court without power to require the district court to reverse its decision); Saman v. Robbins, 173 F.3d 1150, 1154 (9th Cir. 1999) (finding that failure to make a timely motion under Federal Rule of Civil Procedure 50(b) caused plaintiff's sufficiency of evidence arguments to be waived on appeal); Phoenix Eng'g & Supply Inc. v. Universal Elec. Co., Inc., 104 F.3d 1137, 1140 (9th Cir. 1997) (ruling that appellant could not challenge the specificity of the court's findings where appellant failed to make a motion for more specific or additional findings); and Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1356 (9th Cir. 1983) (finding that failure to make a motion to vacate the entry of an arbitration award within the statutory time limit barred assertion of defenses to the petition to confirm the award). It is unfortunate if a client is made to suffer the consequences of his attorney's procedural error, but, as the Supreme Court has stated, "clients must be held accountable for the acts and omissions of their attorneys." Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 396 (1993).
 
 
 40
 Counsel does not even argue that he made the required Rule 9006(b) motion. He explains in his brief to this Court that his reason for not making a Rule 9006(b) motion was that if he successfully opposed the motion to dismiss for lack of proper service, the result would be the same as if the Rule 9006(b) motion was made.
 
 
 41
 Unfortunately for counsel, he did not successfully defend against the motion to dismiss in bankruptcy court. He compounded his failure to properly serve the debtor with a poor choice of legal tactics when he consciously chose not to make a 9006(b) motion. This Circuit's general rule is that "courts are admonished not to `second-guess' trial strategy." United States v. Appoloney, 761 F.2d 520, 525 (9th Cir. 1985) (citations omitted). Courts "must defer to counsel's strategic decisions and view the situation from counsel's perspective. A decision not to put forth a defense may be a conscious strategic option." Id. (citations omitted).
 
 
 42
 The majority, however, would like to rescue counsel from his tactical infirmity by finding that the motion requirement of Rule 9006(b) was "narrowly satisfied." In order to accomplish this feat, the majority appears to construct a Rule 9006(b) motion from counsel's attempt to persuade the bankruptcy judge that the excusable neglect standard can be used to interpret good cause under Rule 4(m). During oral argument before the bankruptcy judge, counsel stated,"I will agree with [opposing counsel] that under the amended rule [4(m)], it's a two-pronged test, or a two-part test; where first the Court determines good cause, and if there is[not][11] good cause, must deny the motion. If not, the Court has discretion." Immediately after this statement, he refers the court to the excusable neglect discussion in Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380 (1993), and says he mentions it for the factors the court should look at when deciding whether to use its discretion to extend the time for service. The entire context of this discussion pertains to the application of the excusable neglect standard to an interpretation of Rule 4(m)'s good cause standard. An analogy to another standard does not rise to the level of a motion. The majority seeks to create a legal fiction by "narrowly" finding a motion was made. I cannot in good conscious agree with this approach.
 
 
 43
 The bankruptcy judge did not make a ruling on a Rule 9006(b) motion. Instead, she acted appropriately by not substituting the excusable neglect standard of Rule 9006(b) for the good cause standard of Rule 4(m). If the bankruptcy judge were to apply the standard from Rule 9006(b), which was not properly before the court, she would re-write Rule 4(m)'s standard. Re-writing law is not the function of the judiciary. See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 430 (1971) (Black, J., dissenting) ("[I]t seems to me to be a matter of common understanding that the business of the judiciary is to interpret the laws and not to make them").
 
 II. Appellate Review
 
 44
 Generally, "a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976). There are exceptions to this rule, such as if "injustice might otherwise result," Hormel v. Helvering, 312 U.S. 552, 557 (1941); there is no doubt as to how the matter should be resolved, Turner v. City of Memphis, Tennessee, 369 U.S. 350, 353 (1962); or a conflict in law was created by a recent court decision, Cristobal v. Siegel, 26 F.3d 1488, 1493 (9th Cir. 1993). If an exception is to be crafted, the underlying consideration the court must keep in mind is whether both parties had the opportunity to present all of the evidence relevant to the issue so that the "litigants may not be surprised on appeal by final decision[s] . . . of issues upon which they have had no opportunity to introduce evidence." Hormel, 312 U.S. at 556.
 
 
 45
 An exception to the general rule is not warranted in this case. Allowing counsel to proceed as if he made a Rule 9006(b) motion would be manifestly unjust to the debtor. See Singleton, 428 U.S. at 121 (finding that injustice was more likely to occur if the issue was decided without the petitioner having the opportunity to be heard at the trial level). Counsel for the debtor did not receive fair notice of the excusable neglect argument because it was not in the creditor's brief. This was a surprise attack that the debtor's counsel had no opportunity to defend against and runs afoul of the guidance provided by the Supreme Court that the parties should have the opportunity to offer evidence on issues. Hormel, 312 U.S. at 556.
 
 
 46
 This is not a case where a single, justifiable error occurred and the court should be inclined to use its equitable powers to create an exception. Rather, this is a case that was riddled with error. Not once, but three times, counsel failed to properly serve the debtor. Then he compounded his error by not making a motion to extend the time for service. Counsel's disregarded established rules of procedure designed to provide a fair system of justice and then used his seriously ill secretary as an excuse. He had four bites at the apple and failed on each attempt.
 
 
 47
 Disregarding such behavior to create an exception to established rules results in judicial anarchy, especially in bankruptcy claims, which require efficient procedures that do not unduly delay the ability of the debtor to make a fresh start. Therefore, courts should not lightly set aside decisions that effect the "expeditious administration" necessary in bankruptcy law. In re Berger, 27 B.R. 201, 204 (Bankr. D.Or. 1982).
 
 
 48
 The bankruptcy judge understood this policy when she rendered her decision. She stated that "[i]t's a matter of public policy that it is not in people's best interest to have their financial circumstances hanging, with some threat, in limbo for a long period of time." She also explained how due process was essential to bankruptcy proceedings and that the Central District of California was pro-active in ensuring the proceeds were fair and uniform:
 
 
 49
 [T]he judges of the Central District of California, along with the bar, have been actively engaged in a process over the last 15 years to promulgate rules that will assist attorneys to make sure that they understand how to get their papers properly before the parties . . .
 
 
 50
 We are a huge district . . . And in the bankruptcy court we have 21 courts, and therefore 21 judges. And to try to ameliorate any problem with respect to individual judges having preferences, and wanting and requiring things that were not announced generally in any one place, the judges have worked very hard.
 
 
 51
 [W]ith cooperation of the bar, [we] . . . make sure that we have procedural rules that are open and available for everyone. So that no one should be taken by surprise, and therefore a lose valuable right because of some procedural impediment. . . .
 
 
 52
 [T]he bankruptcy code is a very notice-intensive statute and practice. Because the very nature of bankruptcy is such that every single case has tens or hundred of parties in interest. Because once a debtor files, there are numerous creditors whose rights are about to be modified, or in fact, eliminated perhaps, in a bankruptcy proceeding. And you can't do that without due process of the law.
 
 
 53
 Constructively creating a Rule 9006(b) motion in order for this Court to hear an argument whittles away at the procedures so carefully put in place by the district court. It creates an additional exception to the service requirement of Rule 4(m), which already allows exceptions for good cause and judicial discretion. This is not how bankruptcy rules should operate.
 
 
 54
 The law, however, is not so rigid as to never allow exceptions, and that is why standards such as excusable neglect and good cause exist. Exceptions, though, are reserved for extreme cases. Counsel's mistake is not such a case. He knew that his secretary was seriously ill and should have realized that there was a very good chance that she would be in and out of the office. When service did fail, counsel made a conscious choice not to make a motion to extend the time for service. This case does not warrant an exception to the general rule, not only because of basic procedural reasons, but because as a matter of public policy it is not the type of behavior this Court should allow, much less promote.
 
 III. Excusable Neglect is not Present
 
 55
 Even under an excusable neglect standard, the creditor still should not prevail. The Pioneer decision supports the position that counsel's situation does not rise to the level of excusable neglect. 507 U.S. 380. In Pioneer, the attorney failed to file proofs of claim by the specified date. His excuse was that he was unaware of the date because "he was experiencing `a major and significant disruption' in his professional life caused by his withdrawal from his former law firm . . . and did not have access to his copy of the case file. " Id. at 384. Applying the excusable neglect factors, the Supreme Court ultimately allowed the attorney's request for relief, not because of his excuse, but because "the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases." Id. at 398. The Supreme Court gave "little weight to the fact that counsel was experiencing upheaval in his law practice." Id. The Court acknowledged that no prejudice existed and that neither party acted in bad faith. Ultimately, the overriding reason for finding excusable neglect was the unusual circumstance in the bar date, not the attorney's reason for the delay, or whether prejudice or bad faith were present.
 
 
 56
 In contrast, there are no unusual circumstances to explain why counsel failed three times to effectuate proper service. Service of a summons is an event that occurs in the ordinary course of bankruptcy proceedings. Excusable neglect may be a flexible standard, but "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute `excusable' neglect." Id. at 392. Thus, counsel's failure to follow basic rules of procedure does not rise to the level of excusable neglect.
 
 
 57
 Although there is no case law in this Circuit using excusable neglect to determine an extension of time under 4(m), other cases applying an excusable neglect standard can provide guidance. In Kyle v. Campbell Soup Co., 28 F.3d 928 (9th Cir. 1994), the court found that an attorney's mistake of law in interpreting the time to file a post-trial motion did not constitute excusable neglect under Federal Rule of Civil Procedure 6(b). Likewise, in Townsel v. County of Contra Costa, 820 F.2d 319 (9th Cir. 1987), ignorance of the time of service under Rule 4(j) -the predecessor to 4(m) -was not excusable neglect. The court in Familian Northwest, Inc. v. RG & B Contractors, Inc., 21 F.3d 952 (9th Cir. 1994), held that the inadvertent omission of invoices from a claim due to corporate restructuring was not excusable neglect because the corporation was aware of the restructuring and the problems it could cause. As with these examples, counsel's failure to perform one of the most fundamental acts to commence an action, service of process, does not rise to the level of excusable neglect.
 
 IV. Conclusion
 
 58
 The noble profession of lawyering has degenerated to the point where there is extreme public criticism of its practices. "The public's lack of trust and confidence in both attorneys and the judicial system has created an overall discontent with the legal profession. In fact, in recent years, the legal profession's reputation has spiraled downward." Lisa M. Stern, Code of Professional Responsibility, 70 St. John's L. Rev. 839, 839 (1996). This deterioration will continue as long as the judiciary permits it. Allowing an attorney to hide behind the serious illness of his secretary and excusing procedural errors simply because of a busy schedule can only further undermine the dignity of the profession. I must dissent.
 
 
 
 Notes:
 
 
 [11]
 The record reads "if there is good cause, must deny the motion." Because this is in opposition to the creditor's position I assume he meant if there was not good cause the court must deny the motion.